# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

CONSENSYS SOFTWARE INC.,

<em>Plaintiff</em>,

v.

GARY GENSLER, Chair of the U.S. Securities and Exchange Commission; CAROLINE A. CRENSHAW, JAIME LIZÁRRAGA, MARK T. UYEDA, and HESTER M. PEIRCE, each a Commissioner of the U.S. Securities and Exchange Commission; and U.S. SECURITIES AND EXCHANGE COMMISSION,

<em>Defendants</em>.

Case No. 4:24-cv-00369-O

## DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6), OR, IN THE ALTERNATIVE, TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a), AND BRIEF IN SUPPORT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ..............................................................................................................1

BACKGROUND ................................................................................................................2

    A.    The complaint addresses two Commission investigations, one involving the digital asset ETH and another involving the Consensys product MetaMask..........................2

    B.    Consensys seeks injunctive and declaratory relief related to the two investigations ....4

    C.    After Consensys filed the complaint, the Commission (1) concluded the ETH investigation without filing an ETH-related enforcement action against Consensys and (2) filed the MetaMask enforcement action against Consensys in the E.D.N.Y...5

ARGUMENT ....................................................................................................................7

I.    The ETH counts should be dismissed ..........................................................................7

    A.    This Court lacks jurisdiction over the ETH counts ..........................................7

        1.    The ETH counts are barred by sovereign immunity..........................................7

        2.    The ETH counts are nonjusticiable ................................................................12

    B.    The ETH counts fail to state a claim..............................................................15

II.    The MetaMask count should be dismissed..................................................................16

    A.    This Court lacks jurisdiction over the MetaMask count.................................16

        1.    The MetaMask count is unripe ......................................................................16

        2.    The MetaMask count is barred by sovereign immunity ...................................19

    B.    This Court should exercise its discretion to dismiss the MetaMask count .................21

III.    Alternatively, this Court should transfer this case to the E.D.N.Y. ...........................................23

CONCLUSION..................................................................................................................25

CERTIFICATE OF CONFERENCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Pages**

*Abbott Lab'ys v. Gardner*,
   387 U.S. 136 (1967) ......................................................................................................23

*Agri-Trans Corp. v. Gladders Barge Line, Inc.*,
   721 F.2d 1005 (5th Cir. 1983) ...................................................................................22

*Alabama-Coushatta Tribe of Tex. v. United States*,
   757 F.3d 484 (5th Cir. 2014) ..........................................................................8, 9, 19

*Am. Airlines, Inc. v. Hermann*,
   176 F.3d 283 (5th Cir. 1999) .....................................................................................11

*AmSouth Bank v. Dale*,
   386 F.3d 763 (6th Cir. 2004) ....................................................................................22

*Apter v. HHS*,
   80 F.4th 579 (5th Cir. 2023) ..........................................................................10-11, 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................15

*Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*,
   976 F.3d 585 (5th Cir. 2020) ......................................................................................6

*Bennett v. Spear*,
   520 U.S. 154 (1997) ....................................................................................................9

*Calderon v. Ashmus*,
   523 U.S. 740 (1998) ..................................................................................................14

*Christopher Vill., Ltd. P'ship v. Retsinas*,
   190 F.3d 310 (5th Cir. 1999) ....................................................................................10

*City of Oakland v. Holder*,
   901 F. Supp. 2d 1188 (N.D. Cal. 2013) ....................................................................20

*City of Oakland v. Lynch*,
   798 F.3d 1159 (9th Cir. 2015) ..................................................................................20

*Cleartrac, L.L.C. v. Lanrick Contractors, L.L.C.*,
   53 F.4th 361 (5th Cir. 2022) .......................................................................................7

*Cont'l Grain Co. v. The FBL-585*,
   364 U.S. 19 (1960) ....................................................................................................25

*Ctr. for Individual Freedom v. Carmouche*,
   449 F.3d 655 (5th Cir. 2006) ....................................................................................12

*Daniel v. Univ. of Tex. Sw. Med. Ctr.*,
   960 F.3d 253 (5th Cir. 2020) ........................................................................7

*DM Arbor Ct., Ltd. v. City of Houston*,
   988 F.3d 215 (5th Cir. 2021) ................................................................ 14, 17

*Doe v. Columbia-Brazoria Indep. Sch. Dist.*,
   855 F.3d 681 (5th Cir. 2017) ......................................................................1

*Doubletree Partners, LP v. Land Am. Am. Title Co.*,
   No. 3:08-cv-1547, 2008 WL 5119599 (N.D. Tex. Dec. 3, 2008) .....................25

*Epstein v. Gray Television, Inc.*,
   No. 3:06-cv-431, 2007 WL 295632 (W.D. Tex. Jan. 5, 2007) ........................24

*FDIC v. Meyer*,
   510 U.S. 471 (1994) ...................................................................................8

*FTC v. Standard Oil Co. of Cal.*,
   449 U.S. 232 (1980) .................................................................................20

*Gentile v. SEC*,
   974 F.3d 311 (3d Cir. 2020) .....................................................................10

*Google, Inc. v. Hood*,
   822 F.3d 212 (5th Cir. 2016) .......................................................................4

*Groos Nat'l Bank v. Comptroller of Currency*,
   573 F.2d 889 (5th Cir. 1978) .....................................................................22

*Gulf Restoration Network v. McCarthy*,
   783 F.3d 227 (5th Cir. 2015) .....................................................................10

*Heckler v. Chaney*,
   470 U.S. 821 (1985) .................................................................................10

*Hodge v. Engleman*,
   90 F.4th 840 (5th Cir. 2024) .....................................................................15

*Huawei Techs. USA, Inc. v. FCC*,
   2 F.4th 421 (5th Cir. 2021) .......................................................................12

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) .....................................................................24

*Jobs, Training & Servs., Inc. v. E. Texas Council of Governments*,
   50 F.3d 1318 (5th Cir. 1995) .......................................................................9

*Kirby Corp. v. Pena*,
   109 F.3d 258 (5th Cir. 1997) .....................................................................11

*Koehler v. United States,*
   153 F.3d 263 (5th Cir. 1998) ............................................................................. 8

*Kuykendall v. Amazon Studios LLC,*
   No. 5:20-cv-219, 2022 WL 19337991 (S.D. Tex. Mar. 18, 2022) ............................ 24, 25

*Larson v. Domestic & Foreign Com. Corp.,*
   337 U.S. 682 (1949) ........................................................................................11

*Louisiana v. United States,*
   948 F.3d 317 (5th Cir. 2020) ............................................................................. 8

*MedImmune, Inc. v. Genentech, Inc.,*
   549 U.S. 118 (2007) ........................................................................................21

*Moore v. Sims,*
   442 U.S. 415 (1979) ........................................................................................23

*Morgan Drexen, Inc. v. CFPB,*
   785 F.3d 684 (D.C. Cir. 2015) ...................................................................... 19, 23

*Ohio Forestry Ass'n v. Sierra Club,*
   523 U.S. 726 (1998) ........................................................................................12

*Orix Credit All., Inc. v. Wolfe,*
   212 F.3d 891 (5th Cir. 2000) ...................................................................... 14, 16

*Pearson v. Holder,*
   624 F.3d 682 (5th Cir. 2010) ............................................................................19

*Pennhurst State Sch. & Hosp. v. Halderman,*
   465 U.S. 89 (1984) .........................................................................................12

*Physician Hosps. of Am. v. Sebelius,*
   691 F.3d 649 (5th Cir. 2012) ............................................................................. 7

*Pontchartrain Partners, L.L.C. v. Tierra de Los Lagos, L.L.C.,*
   48 F.4th 603 (5th Cir. 2022) .............................................................................22

*Ramming v. United States,*
   281 F.3d 158 (5th Cir. 2001) ............................................................................. 6

*SEC v. Arcturus Corp.,*
   928 F.3d 400 (5th Cir. 2019) ............................................................................11

*SEC v. Citigroup Glob. Mkts., Inc.,*
   752 F.3d 285 (2d Cir. 2014) .............................................................................10

*SEC v. Coinbase, Inc.,*
   No. 23-cv-4738, 2024 WL 1304037 (S.D.N.Y. Mar. 27, 2024) .................................. 3

*SEC v. Marin,*
   982 F.3d 1341 (11th Cir. 2020) ................................................................................16

*SEC v. Terraform Labs Pte. Ltd.,*
   684 F. Supp. 3d 170 (S.D.N.Y. 2023) ......................................................................11

*SEC v. W.J. Howey Co.,*
   328 U.S. 293 (1946) ...........................................................................................11, 12

*Sherwin-Williams Co. v. Holmes Cnty.,*
   343 F.3d 383 (5th Cir. 2003) ............................................................................16, 21

*Sierra Club v. Peterson,*
   228 F.3d 559 (5th Cir. 2000) ....................................................................................9

*St. Paul Ins. Co. v. Trejo,*
   39 F.3d 585 (5th Cir. 1994) ....................................................................................21

*St. Tammany Par. ex rel. Davis v. FEMA,*
   556 F.3d 307 (5th Cir. 2009) ....................................................................................7

*Texas v. EEOC,*
   933 F.3d 433 (5th Cir. 2019) ....................................................................................9

*Texas v. United States,*
   523 U.S. 296 (1998) ................................................................................................14

*United States v. Vega,*
   960 F.3d 669 (5th Cir. 2020) ..................................................................................12

*Van Dusen, v. Barrack,*
   376 U.S. 612 (1964) ................................................................................................24

*Veldhoen v. U.S. Coast Guard,*
   35 F.3d 222 (5th Cir. 1994) ................................................................................9, 20

*Ven-Fuel, Inc. v. Department of the Treasury,*
   673 F.2d 1194 (11th Cir. 1982) ..............................................................................23

*Walmart Inc. v. DOJ,*
   21 F.4th 300 (5th Cir. 2021) ...................................... 9, 12, 13, 16, 17, 18, 19, 20

*Walmart Inc. v. DOJ,*
   517 F. Supp. 3d 637 (E.D. Tex. 2021) ...................................................................17

*Webster v. Doe,*
   486 U.S. 592 (1988) ................................................................................................10

*W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Atl. & Gulf Coast Dist. of ILA,*
   751 F.2d 721 (5th Cir. 1985) ............................................................................22, 23

*Wilton v. Seven Falls Co.,*
    515 U.S. 277 (1995) ................................................................................................................ 21

*Younger v. Harris,*
    401 U.S. 37 (1971) ................................................................................................................. 23

**Statutes**

Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq.*

    5 U.S.C. § 551 .................................................................................................................... 4-5

    5 U.S.C. § 551(13) ...................................................................................................... 8, 9, 20

    5 U.S.C. § 701(a)(2) .................................................................................................... 8, 9, 10

    5 U.S.C. § 702 ........................................................................................................... 8, 10, 20

    5 U.S.C. § 704 ...................................................................................................................... 20

Securities Act of 1933, 15 U.S.C. §§ 77a *et seq.*

    Section 5(a), 15 U.S.C. § 77e(a) .............................................................................................. 4

    Section 5(c), 15 U.S.C. § 77e(c) .............................................................................................. 4

    Section 20(a), 15 U.S.C. § 77t(a) .............................................................................. 10, 11, 12

    Section 20(b), 15 U.S.C. § 77t(b) .......................................................................................... 10

Securities Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.*

    Section 15(a), 15 U.S.C. § 78o(a) ............................................................................................ 4

    Section 21(a)(1), 15 U.S.C. § 78u(a)(1) ..................................................................... 10, 11, 12

    Section 21(d), 15 U.S.C. § 78u(d) ......................................................................................... 10

    Section 21(g), 15 U.S.C. § 78u(g) ......................................................................................... 23

28 U.S.C. § 1331 ......................................................................................................................... 8

28 U.S.C. § 1391(e)(1)(B) ......................................................................................................... 24

28 U.S.C. § 1404(a) .................................................................................................. 1, 2, 7, 23-24, 25

Declaratory Judgment Act, 28 U.S.C. § 2201 ............................................................................ 21

**Rules**

Fed. R. Civ. P. 12(b)(1) ....................................................................................................... 1, 6, 7

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 1, 6, 15

**<u>Miscellaneous</u>**

SEC, Division of Enforcement, *Enforcement Manual* (Nov. 28, 2017),
    https://www.sec.gov/divisions/enforce/enforcementmanual.pdf ......................................... 3, 4, 16

*SEC v. Consensys Software Inc.*,
    No. 1:24-cv-04578 (*complaint filed* E.D.N.Y. June 28, 2024)..................................................... 6, 18, 24

Defendants Securities and Exchange Commission and its five Commissioners in their official capacities move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), or, alternatively, to transfer venue pursuant to 28 U.S.C. § 1404(a).[1]

## INTRODUCTION

Plaintiff Consensys Software Inc., which makes software for blockchains, including the Ethereum blockchain, rushed to this Court because it faced potential Commission enforcement actions stemming from two separate Commission investigations.  The first investigation, which is the focus of Consensys's complaint, related to ETH, the digital asset that is native to the Ethereum blockchain.  That investigation has now concluded without an enforcement action being brought against Consensys.  The second investigation related to a Consensys software product known as "MetaMask" and has now resulted in a Commission enforcement action against Consensys, which is currently pending in New York federal court.  But for both its ETH-related counts and its MetaMask-related count, Consensys's complaint fails to establish subject-matter jurisdiction or state a claim.

Consensys's ETH-related counts should be dismissed because Consensys has not demonstrated a waiver of sovereign immunity and because the conclusion of the ETH investigation rendered moot the requests for relief related to the ETH investigation.  Moreover, the ETH-related counts do not state a claim because the complaint fails to allege facts demonstrating their central premise, namely that the Commission determined that ETH is a security and undertook the ETH investigation as a result of that determination.

Consensys's MetaMask-related count is beset by comparable flaws.  The request for declaratory relief regarding the MetaMask investigation should be dismissed for lack of jurisdiction

---

[1] By filing this motion, defendants do not waive and reserve all defenses.  *See, e.g., Doe v. Columbia-Brazoria Indep. Sch. Dist.*, 855 F.3d 681, 686 (5th Cir. 2017).

and as a matter of discretion.  The claim is unripe under controlling Fifth Circuit precedent in light of the pending enforcement action, and the lack of final agency action bars the suit under principles of sovereign immunity.  But even beyond these jurisdictional defects, this Court should decline to exercise its jurisdiction to decide the request for declaratory relief because the MetaMask-related count is an improper anticipatory effort to turn a government plaintiff into a defendant even though all the MetaMask-related issues that Consensys raises in the complaint will be resolved in the pending enforcement action.

Alternatively, to the extent this Court concludes that it has subject-matter jurisdiction and that the complaint should not be dismissed in its entirety, it should transfer venue of what remains of this case pursuant to 28 U.S.C. § 1404(a) to the U.S. District Court for the Eastern District of New York, in which the Commission's MetaMask enforcement action is pending.

## BACKGROUND

### A.    The complaint addresses two Commission investigations, one involving the digital asset ETH and another involving the Consensys product MetaMask.

The complaint mostly focuses on Ethereum (a blockchain), its native digital asset (ETH), and a now-concluded Commission investigation into ETH.  The complaint also describes a second Commission investigation involving MetaMask, a Consensys software product.  Upon learning that this second investigation was nearing its end, Consensys rushed to file the complaint.  Much of the complaint, however, consists of legal conclusions about ETH and whether it is a security under federal law.  *See, e.g.*, Compl. ¶¶ 3-7, 9-12, 48-62, 77-81.

Consensys refers to the first investigation as the "Ethereum 2.0" investigation (the "2.0" refers to how Ethereum is described in the digital-asset industry today).  *See id.* ¶ 75.  According to Consensys, in 2023, the Director of the Commission's Division of Enforcement approved a formal order of investigation, delegating to Commission staff the authority to "investigate and subpoena

individuals and entities involved in the buying or selling of ETH." *Id.* ¶ 71; *see* SEC, Division of

Enforcement, *Enforcement Manual* § 2.3.4 (Nov. 28, 2017), https://www.sec.gov/divisions/enforce/

enforcementmanual.pdf (explaining that a formal order describes the nature of the investigation and

designates and empowers specific Commission staff to conduct it). Consensys alleges that it

"acquires, holds, and sells ETH in the ordinary course of its business" (Compl. ¶ 8), and that the

investigation concerned, in relevant part, "whether Consensys's current offers and sales of ETH

* * * are securities transactions" (*id.* ¶ 73).

      The second investigation concerns two "core features" of Consensys's MetaMask product,

"MetaMask Swaps" and "MetaMask Staking." *Id.* ¶ 42. Consensys alleges that MetaMask Swaps is

"an application that allows users to communicate with third-party decentralized exchanges * * *

where they can buy, sell, or exchange tokens." *Id.* ¶ 43. MetaMask Staking is used for digital-asset

staking.[2] Consensys alleges that MetaMask Staking is "an application that allows users to

communicate with * * * third-party protocols called Lido and Rocket Pool, each of which offers a

'liquid staking service' for validating transactions on the Ethereum blockchain." *Id.* ¶ 46. MetaMask

Staking participants deposit ETH into a pool—participants thus "stake" their own ETH—and then

receive "a tokenized version of the staked tokens." *Id.* MetaMask Staking participants receive a

different asset (not ETH) that reflects the ETH that they have staked, and that separate token, "like

any other token, can be swapped for other crypto or money." *Id.* Or, as Consensys sums it up,

---

[2] "The transactions on a public blockchain are confirmed by the participants in that blockchain's
transaction verification process." Compl. ¶ 29. "Before a transaction is entered on the blockchain,
validators must reach a consensus on the transactions to add to the ledger" "to ensure that
transactions * * * are accurately and securely recorded on the ledger." *Id.* "In a proof-of-stake
network, validators 'stake' some of their blockchain tokens—posting the tokens as a bond—while
they verify new transactions proposed to be added to the blockchain." *Id.* ¶ 30. "[V]alidators can
earn additional tokens as a fee for validating other users' transactions and maintaining consensus as
to the history of transactions on the blockchain." *Id.*; *see also SEC v. Coinbase, Inc.*, No. 23-cv-4738,
2024 WL 1304037, at *27 (S.D.N.Y. Mar. 27, 2024) (describing digital-asset staking).

MetaMask Staking "allow[s] users to deposit ETH for staking and receive a tokenized version of the staked digital asset in return." *Id.* ¶ 47.

Consensys alleges that in 2022 it learned that the Commission's Division of Enforcement "was 'conducting an investigation' of MetaMask." *Id.* ¶ 66. In April 2024, Commission staff sent Consensys a "Wells notice" regarding the MetaMask investigation. *Id.* ¶ 68. A Wells notice is a Commission staff communication to a person involved in an investigation that the staff has made a preliminary determination to recommend that the Commission file an action charging violations of the federal securities laws and that the person may make a submission to the staff and the Commission concerning the proposed recommendation. *Enforcement Manual* § 2.4. Consensys also alleges that in a telephone call Commission staff expressed their view that in connection with MetaMask Swaps and MetaMask Staking Consensys was acting as an unregistered broker-dealer in violation of Section 15(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(a), and that in connection with MetaMask Staking Consensys was engaged in unregistered offers and sales of securities in violation of Sections 5(a) and 5(c) of the Securities Act of 1933, 15 U.S.C. §§ 77e(a), 77e(c). Compl. ¶ 68. The complaint does not allege that the MetaMask investigation was related to the ETH investigation or that the alleged violations of the federal securities laws found by the MetaMask investigation were premised on ETH being offered or sold as a security.

### B.   Consensys seeks injunctive and declaratory relief related to the two investigations.

Three of the complaint's four counts relate to the ETH investigation and are premised on the Commission purportedly determining that ETH is a security and then undertaking the ETH investigation as a result of that determination. Arguing that ETH transactions are not securities transactions (Compl. ¶¶ 78-81) and that Consensys lacked fair notice of the Commission's "position on ETH" (*id.* ¶¶ 82-85), Consensys asserts that the ETH investigation was *ultra vires,* and that it violated the Constitution's Due Process Clause and the Administrative Procedure Act (APA), 5

U.S.C. §§ 551 *et seq.*  Compl. ¶¶ 91-114.  Consensys requests that this Court declare that "ETH is not a security," that "Consensys's sales of ETH are not sales of securities," and that "any investigation or enforcement action against Consensys premised on ETH transactions being securities transactions would exceed the SEC's authority" and violate the Due Process Clause.  *Id.* ¶ 121.  Consensys also asks this Court to declare the ETH investigation formal order invalid and enjoin the ETH investigation.  *Id.*  Finally, Consensys asks this Court to permanently enjoin the Commission from "pursuing any investigation or enforcement action premised on ETH transactions being securities transactions."  *Id.*

The complaint's fourth count relates to the MetaMask investigation.  Consensys asks this Court to declare that Consensys does not act as a broker in connection with MetaMask Swaps and MetaMask Staking and that any Commission investigation or enforcement action premised on Consensys doing so would exceed the Commission's statutory authority.  *Id.*  Similarly, Consensys asks this Court to declare that Consensys does not participate in the offering or sale of securities in connection with MetaMask Staking and that any Commission investigation or enforcement action premised on Consensys doing so would exceed the Commission's statutory authority.  *Id.*  And Consensys asks this Court to permanently enjoin the Commission from "bringing or maintaining any investigation or enforcement action" related to MetaMask Swaps or MetaMask Staking "as doing so would exceed the agency's statutory authority."  *Id.*

> **C.** **After Consensys filed the complaint, the Commission (1) concluded the ETH investigation without filing an ETH-related enforcement action against Consensys and (2) filed the MetaMask enforcement action against Consensys in the E.D.N.Y.**

On April 25, 2024—fifteen days after receiving the Wells notice in the MetaMask investigation (Compl. ¶ 68), Consensys filed the complaint.  Dkt. 1.  Two subsequent events—the

conclusion of the ETH investigation and the filing of the MetaMask enforcement action against Consensys—relate to defendants' dismissal arguments.

First, the ETH investigation, upon which Consensys premises most of the complaint, has concluded. On June 18, 2024, Commission staff informed counsel for Consensys that the ETH investigation had "concluded" and that "based on the information we have as of this date, we do not intend to recommend an enforcement action by the Commission against * * * Consensys * * * with respect to this investigation." Ex. A (Letter from Kristin M. Pauley, Assistant Director, SEC Division of Enforcement, to Kevin S. Schwartz, Wachtell, Lipton, Rosen & Katz (June 18, 2024)).[3] That same day, Consensys publicly announced the conclusion of the investigation. Ex. B (Consensys, *SEC Closes Ethereum 2.0 Investigation, Will Not Pursue Ethereum Enforcement Action*, CONSENSYS BLOG (June 18, 2024), https://consensys.io/blog/sec-closes-ethereum-2-0-investigation-will-not-pursue-ethereum-enforcement).

Second, and with regard to the MetaMask investigation, on June 28, 2024, the Commission filed an enforcement action against Consensys in the Eastern District of New York, *SEC v. Consensys Software Inc.*, No. 1:24-cv-04578 (E.D.N.Y.). The enforcement action alleges that Consensys violated the federal securities laws by operating as an unregistered broker in connection with MetaMask Staking and MetaMask Swaps and by failing to register the offer and sale of securities in connection with MetaMask Staking. Ex. C. (Complaint, *SEC v. Consensys Software Inc.*, No. 1:24-cv-04578 (E.D.N.Y. June 28, 2024), Dkt. 1). The alleged violations are not premised on the offer or sale of ETH being a securities transaction under the federal securities laws. *See, e.g., id.* ¶¶ 129-322

---

[3] *See Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (in deciding a Rule 12(b)(6) motion, a court may consider "documents incorporated into the complaint by reference, and matters of which [it] may take judicial notice") (cleaned up); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (in deciding a Rule 12(b)(1) motion, a court may consider "the complaint supplemented by undisputed facts evidenced in the record").

(identifying securities alleged to have been transacted through MetaMask Swaps and MetaMask Staking, which do not include ETH).

## ARGUMENT

This Court should dismiss the complaint for lack of subject-matter jurisdiction and for failure to state a claim and should exercise its discretion to decline to decide the requested declaratory relief regarding the MetaMask count. Alternatively, to the extent this Court concludes that it has subject-matter jurisdiction and that the complaint should not be dismissed in its entirety, it should transfer venue of what remains of this case pursuant to 28 U.S.C. § 1404(a) to the E.D.N.Y.

## I. The ETH counts should be dismissed.

This Court lacks jurisdiction over the complaint's ETH-related counts because they are barred by sovereign immunity and are nonjusticiable. "The burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Cleartrac, L.L.C. v. Lanrick Contractors, L.L.C.*, 53 F.4th 361, 364 (5th Cir. 2022) (cleaned up). "[A]t the Rule 12(b)(1) stage of the proceedings, the plaintiffs' burden is to allege a plausible set of facts establishing jurisdiction." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012). A court accepts the complaint's factual allegations as true but need not accept its legal conclusions. *Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 256 (5th Cir. 2020).

### A. This Court lacks jurisdiction over the ETH counts.

#### 1. The ETH counts are barred by sovereign immunity.

Consensys fails to carry its burden of showing "Congress's unequivocal waiver of sovereign immunity" as to the three ETH-related counts. *St. Tammany Par. ex rel. Davis v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009). "[T]he United States may not be sued except to the extent that it has consented to suit by statute," and where there is no consent or waiver, "the court lacks jurisdiction."

*Alabama-Coushatta Tribe of Tex. v. United States*, 757 F.3d 484, 488 (5th Cir. 2014) (cleaned up); *accord FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.").

1.  Consensys fails to identify any waiver of sovereign immunity that would allow it to proceed with its counts alleging that the ETH investigation violated the Due Process Clause (the second count) and the APA (the third count).  The complaint does not invoke Section 702 of the APA, which can waive sovereign immunity for actions seeking nonmonetary relief brought by "person[s] suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action."  5 U.S.C. § 702.  But even were Section 702 invoked, there is no waiver of sovereign immunity for either count because (1) Consensys has not identified a final agency action that caused it legal wrong, *Alabama-Coushatta*, 757 F.3d at 489, and (2) even if Consensys could identify such a final agency action, the waiver would not apply because these counts challenge investigatory and prosecutorial decisions by the Commission, which are "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and not reviewable.[4]

First, Consensys has failed to "identify some agency action affecting [it] in a specific way" or to show that it "suffered legal wrong because of the challenged agency action."  *Alabama-Coushatta*, 757 F.3d at 489 (cleaned up).  Consensys does not "point to any identifiable 'agency action' within the meaning of § 702."  *Id.* at 490.  "'[A]gency action' for the purposes of [Section] 702 is set forth by 5 U.S.C. § 551(13) and is defined as 'the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act.'"  *Id.* at 489, quoting 5 U.S.C. § 551(13); *see also Louisiana v. United States*, 948 F.3d 317, 321 (5th Cir. 2020) (stating that "agency action" is "a

---

[4] The complaint's jurisdictional allegations do not solve Consensys's sovereign-immunity problem. Consensys alleges subject-matter jurisdiction under 28 U.S.C. § 1331 (Compl. ¶ 24), but "[i]t is well settled * * * that sovereign immunity is not waived by a general jurisdictional statute such as 28 U.S.C. § 1331," *Koehler v. United States*, 153 F.3d 263, 266 n.2 (5th Cir. 1998).

term of art that does not include all conduct") (cleaned up).  But rather than pointing to something included in Section 551(13) that has affected it, Consensys points to the ETH investigation.  *See, e.g.*, Compl. ¶ 103.  An "investigation" is neither included as nor fits in any of the categories of "agency action" as that term is defined by the APA.  5 U.S.C. § 551(13).

Moreover, because counts two and three seek judicial review "pursuant only to the general provisions of the APA * * * [t]here must be final agency action" in order for this Court to exercise jurisdiction.  *Alabama-Coushatta*, 757 F.3d at 489 (cleaned up); *see Texas v. EEOC*, 933 F.3d 433, 440 n.8 (5th Cir. 2019) ("In this circuit, whether an agency action is final is a jurisdictional issue."); *see also Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994) ("An attack on the authority of an agency to conduct an investigation does not obviate the final agency action requirement.").  "Final agency actions are actions which (1) 'mark the consummation of the agency's decisionmaking process,' and (2) 'by which rights or obligations have been determined, or from which legal consequences will flow.'"  *Sierra Club v. Peterson*, 228 F.3d 559, 565 (5th Cir. 2000) (en banc), quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997).  The ETH investigation was not final agency action because "[a]n agency's initiation of an investigation does not constitute final agency action." *Veldhoen*, 35 F.3d at 225; *accord Jobs, Training & Servs., Inc. v. E. Texas Council of Governments*, 50 F.3d 1318, 1324 (5th Cir. 1995).  Indeed, the "conclusion" of an agency investigation does not "fix legal rights or impose obligations, even if further proceedings prompted by the [agency's] decision may." *Veldhoen*, 35 F.3d at 226.  And even assuming that the complaint sufficiently alleges final agency action, Consensys fails to show that it "suffered legal wrong" on account of that agency action. *Walmart Inc. v. DOJ*, 21 F.4th 300, 308 (5th Cir. 2021); *Alabama-Coushatta*, 757 F.3d at 489.

Second, even if the ETH investigation somehow implicated final agency action affecting Consensys, the APA's exception for actions "committed to agency discretion" would bar reliance on its sovereign-immunity waiver.  5 U.S.C. § 701(a)(2) ("This chapter applies, according to the

provisions thereof, except to the extent that * * * agency action is committed to agency discretion by law.").  Congress has provided that the waiver "does not apply [if the challenged] 'agency action is committed to agency discretion by law.'"  *Gulf Restoration Network v. McCarthy*, 783 F.3d 227, 233 (5th Cir. 2015), quoting 5 U.S.C. § 701(a)(2); *see Webster v. Doe*, 486 U.S. 592, 597 (1988) ("[J]udicial review under § 702 * * * is predicated on satisfying the requirements of § 701.").  "An action is committed to agency discretion when 'no judicially manageable standards are available for judging how and when an agency should exercise its discretion.'"  *Christopher Vill., Ltd. P'ship v. Retsinas*, 190 F.3d 310, 315 (5th Cir. 1999), quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985).

Consensys seeks to prevent the Commission from continuing the ETH investigation or bringing a related enforcement action.  *See, e.g.*, Compl. ¶¶ 104, 113.  But the decisions whether to investigate and whether to bring enforcement actions are committed to the Commission's discretion by law.  *See, e.g.*, 15 U.S.C. §§ 77t(a), (b), 78u(a)(1), (d).  Indeed, the "exercise of prosecutorial discretion" to investigate and to bring enforcement actions, which implicates the Commission's priorities and allocation of its finite resources and for which there are not judicially manageable standards, is the paradigmatic example of an agency decision that is committed to agency discretion by law.  *Heckler*, 470 U.S. at 827-34 (cleaned up); *Gentile v. SEC*, 974 F.3d 311, 319 (3d Cir. 2020) (holding that the Commission's "decision on whether to investigate is a matter committed to agency discretion by law."); *SEC v. Citigroup Glob. Mkts., Inc.*, 752 F.3d 285, 297 (2d Cir. 2014) ("The exclusive right to choose which charges to levy against a defendant rests with the S.E.C.").  Because the decisions whether to investigate and whether to bring enforcement actions are committed to the Commission's discretion by law, Section 702 is inapplicable and this Court lacks jurisdiction.

2.  Consensys also resorts to the frequently rejected *ultra vires* exception to sovereign immunity, which "provides that where the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions."  *Apter v. HHS*, 80 F.4th 579,

587 (5th Cir. 2023) (cleaned up); *see also Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689-90

(1949).  Even assuming that such a claim is potentially viable, *ultra vires* is a "rarely invocable,"

"narrow" exception to the APA's final agency action requirement that permits judicial intervention

for only the most "egregious error[s]" where a party is "wholly deprive[d] * * * of a meaningful and

adequate means of vindicating its rights." *Am. Airlines, Inc. v. Hermann*, 176 F.3d 283, 293-94 (5th

Cir. 1999); *see Apter*, 80 F.4th at 593 (declining to consider the viability of a freestanding *ultra vires*

claim and noting that "under our precedent, Congress apparently did away with the *ultra vires*

doctrine and other fictions surrounding sovereign immunity when it amended the APA in 1976")

(cleaned up).  "To invoke this exception, a plaintiff must do more than simply allege that the actions

of the officer are illegal or unauthorized.  Rather, the complaint must allege facts sufficient to

establish that the officer was acting without any authority whatever, or without any colorable basis

for the exercise of authority." *Apter*, 80 F.4th at 587-88 (cleaned up).

Consensys premises its *ultra vires* claim on the Commission supposedly incorrectly

interpreting the Securities Act regarding ETH transactions.  Compl. ¶ 94.  But Congress gave the

Commission clear authority to undertake investigations, "in its discretion" 15 U.S.C. § 77t(a), and as

"it deems necessary," *id.* § 78u(a)(1), to determine whether any person has violated the federal

securities laws—a broad grant of discretionary authority that covers investigations that may concern

digital assets.  And, in any event, whether the Securities Act reaches ETH transactions depends on

the "fact-intensive application of a statutory standard," *SEC v. Terraform Labs Pte. Ltd.*, 684 F. Supp.

3d 170, 192 (S.D.N.Y. 2023) (cleaned up), and such a "dispute over statutory interpretation" is

insufficient to permit an *ultra vires* claim, *Kirby Corp. v. Pena*, 109 F.3d 258, 269 (5th Cir. 1997)

(cleaned up).  *See also SEC v. Arcturus Corp.*, 928 F.3d 400, 409 (5th Cir. 2019) (confirming that the

test for whether an asset is a "security" under *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946), is fact-

intensive because *Howey* created "a flexible test for determining whether an investment contract qualifies as a security").

Finally, unlike in *Apter*, where the FDA "d[id] not argue that it actually does have authority" and "never point[ed] to any authority that allows it" to perform the acts in question, 80 F.4th at 588 (cleaned up), here the Commission has specific statutory authority to investigate violations of the federal securities laws. *See, e.g.*, 15 U.S.C. §§ 77t(a), 78u(a)(1). Thus the complaint fails to allege facts sufficient to establish that defendants acted "without any authority whatever" or "colorable basis for the exercise of authority." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984) (cleaned up).

### 2.    The ETH counts are nonjusticiable.

In light of the Commission having concluded the ETH investigation without bringing an enforcement action against Consensys (or anyone else), the ETH counts are nonjusticiable due to a combination of mootness and unripeness, both of which are assessed claim by claim. *Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 434 n.27 (5th Cir. 2021); *United States v. Vega*, 960 F.3d 669, 673 (5th Cir. 2020). Mootness applies when a change in circumstances "eliminates actual controversy after the commencement of a lawsuit." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006). And ripeness prevents "the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements * * * and also * ** protect[s] the agencies from judicial interference." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732-33 (1998) (cleaned up). "Ripeness is a twofold inquiry that requires courts to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Walmart*, 21 F.4th at 311 (cleaned up). Consensys's requests for relief regarding the now-concluded ETH

investigation are moot, while Consensys's requests for relief regarding a potential future ETH-related enforcement action are unripe.

Because the ETH investigation has "concluded" (Ex. A), Consensys's requests that this Court "prevent[] the SEC from continuing [the ETH] investigation" (Compl. ¶¶ 99, 104, 113) are moot. There is no actual controversy as to the continuation of the ETH investigation because it has concluded. *See, e.g., id.* ¶ 96 (alleging that Consensys's supposed injury caused by the ETH investigation "will continue so long as * * * the investigation into Consensys's ETH sales continues"). The same is true of the complaint's request that this Court "prevent[] * * * any enforcement action arising out of [the ETH] investigation against Consensys" (*id.* ¶ 113; *see also id.* ¶ 103) because the ETH investigation concluded without Commission staff recommending any such enforcement action to the Commission. *See* Ex. A.

Consensys also asks this Court to "prevent[] the SEC from * * * commencing an enforcement action against Consensys based on the premise that Consensys's transaction in ETH are securities transactions." Compl. ¶¶ 99, 104. A concluded investigation with no charges cannot, by definition, lead to an enforcement action. But, in any event, questions regarding a supposed future enforcement action are not fit for judicial for review when considering "the likelihood that [the enforcement action] will occur," as well as "whether [judicial] consideration of [the] issue would benefit from a more concrete setting," "whether the agency's action is sufficiently final," and "whether the issue presented is purely legal." *Walmart*, 21 F.4th at 311 (cleaned up). "Failure on even one of [these] prongs can render a case unfit for judicial review," *id.*, and here all of the considerations demonstrate a lack of fitness for review.

As an initial matter, the complaint argues that judicial review is appropriate in light of the ETH investigation, but that investigation resulted in a determination not to bring an ETH-related enforcement action against Consensys. "[I]n determining whether a justiciable controversy exists"

regarding the filing of a lawsuit that "is contingent upon certain factors," a court "must take into account the likelihood that these contingencies will occur." *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 897 (5th Cir. 2000); *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (cleaned up).  Here, a potential future ETH-related enforcement action against Consensys is not "sufficiently likely to happen to justify judicial intervention." *Orix*, 212 F.3d at 897 (cleaned up).  There are, for example, no allegations indicating that the Commission is pursuing a new investigation premised on Consensys's ETH transactions being securities transactions.

In addition to its prematurity, the judicial review sought by Consensys is unwarranted because the contours of a potential ETH-related enforcement action against it are entirely unknown. "A case becomes ripe when it would not benefit from any further factual development and when the court would be in no better position to adjudicate the issues in the future than it is now." *DM Arbor Ct., Ltd. v. City of Houston*, 988 F.3d 215, 218 (5th Cir. 2021) (cleaned up).  And because the contours of a potential future enforcement action are unknown, Consensys has at most "carved out" questions that could bear on liability in such an action, but the judicial power may be invoked only to "resolve the entire case or controversy," not to "gain a litigation advantage by obtaining an advance ruling" on discrete legal issues. *Calderon v. Ashmus*, 523 U.S. 740, 746-47 (1998).  This Court should not "adjudicat[e] whether federal law would allow an enforcement action" when that "require[s] * * * determin[ing] the legality of * * * hypothetical situations," particularly with respect to "a fuzzily defined range of enforcement actions that do not appear imminent." *Google, Inc. v. Hood*, 822 F.3d 212, 227 (5th Cir. 2016) (cleaned up).

Finally, hardship to Consensys from withholding judicial review does not justify judicial intervention at this juncture because Consensys will suffer no cognizable harm if this Court refuses

to provide an advisory opinion about a potential future ETH-related enforcement action.  Indeed, Consensys told the world that in its view, the conclusion of the ETH investigation was "a major win for Ethereum developers, technology providers, and industry participants" and represented "the SEC's decision to stand down on Ethereum."  Ex. B.

**B.      The ETH counts fail to state a claim.**

The ETH counts assert that the Commission determined that ETH is a security and then undertook the ETH investigation as a result of that determination.  *E.g.,* Compl. ¶ 103 ("The SEC's investigation * * * is predicated on a determination that ETH is a security.").  But the complaint fails to allege facts demonstrating that the Commission has determined that ETH is a security, much less that the ETH investigation was based on such a determination.  The ETH counts thus fail to state a claim.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (cleaned up); *see also Hodge v. Engleman*, 90 F.4th 840, 843 (5th Cir. 2024) ("Although [courts] accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true.") (cleaned up).

Consensys points only to the ETH investigation formal order, which Consensys claims "designat[ed] ETH as a security."  Compl. ¶ 10; *see also id.* ¶ 71.  But the two-page formal order, which describes the nature of the investigation and designates and empowers specific staff members to conduct it (*see supra* 3), neither made, nor based the investigation on, such a designation.  The formal order states that "[t]he Commission has information that tends to show that from at least late 2018," Ethereum and others may have offered or sold "certain securities, including, but not limited to ETH, as to which no registration statement was or is in effect or on file with the Commission, and for which no exemption was or is available."  Ex. D (*In the Matter of Ethereum 2.0*, Order

Directing Private Investigation and Designating Officers to Take Testimony (Mar. 28, 2023)).  It

orders an investigation "to determine whether any persons or entities have engaged in, or are about

to engage in, any of the reported acts or practices or any acts or practices of similar purport or

object," and empowers certain Commission staff to undertake the investigation.  *Id.*

      Contrary to Consensys's characterization, the formal order did not make any final

determination that ETH was a security.  Nor did it somehow designate ETH as a security or ETH

transactions as securities transactions for all purposes, or predicate the ETH investigation on such a

designation.  Indeed, any such determination or designation would be beyond the scope of a formal

order of investigation, which is merely the procedure by which the Commission authorizes formal

investigations.  *See SEC v. Marin*, 982 F.3d 1341, 1353-54 (11th Cir. 2020) (describing formal orders);

*see also Enforcement Manual* §§ 2.3.3-4 (same).  In any event, the ETH investigation has concluded, and

the formal order has no continuing power or effect beyond authorizing an investigation that is no

more.

## II.     The MetaMask count should be dismissed.

      The complaint's request for declaratory relief as to MetaMask (Compl. ¶¶ 115-20) should be

dismissed for lack of jurisdiction and as a matter of discretion.  In resolving whether to decide or

dismiss such a request for relief, a court "must determine: (1) whether the declaratory action is

justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to

exercise its discretion to decide or dismiss the action."  *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d

383, 387 (5th Cir. 2003), citing *Orix*, 212 F.3d at 895.

### A.     This Court lacks jurisdiction over the MetaMask count.

#### 1.     The MetaMask count is unripe.

      As discussed above (*see supra* 12), ripeness requires courts to evaluate both the fitness of the

issues for judicial decision and the hardship to the parties of withholding judicial consideration.  "As

ripeness is peculiarly a question of timing, it is the situation now * * * that must govern." *DM Arbor*, 988 F.3d at 219 (cleaned up).  For the reasons explained by the Fifth Circuit in *Walmart*, Consensys has not established ripeness because, particularly in light of the Commission's filing of the MetaMask enforcement action, Consensys's requests for relief related to MetaMask are unfit for judicial decision and Consensys will suffer no cognizable hardship if this Court's consideration is withheld.

*Walmart* shows the unripeness of the MetaMask count.  After the Department of Justice began investigating Walmart for violations of the Controlled Substances Act, Walmart filed a declaratory judgment action against the Department of Justice in Texas, "requesting * * * declarations about the precise limits of pharmacists' obligations" under that law.  *Walmart*, 21 F.4th at 306.  Just a few weeks later, the government sued Walmart in Delaware federal court and "[took] versions of the positions" that Walmart had challenged in the declaratory judgment action.  *Id.*  The district court dismissed the declaratory judgment action as barred by sovereign immunity.  *Walmart Inc. v. DOJ*, 517 F. Supp. 3d 637, 655 (E.D. Tex. 2021).  On appeal, the Fifth Circuit affirmed on "both" sovereign immunity and ripeness grounds.  *Walmart*, 21 F.4th at 305.  The court held that ripeness was lacking because "[t]he existence of [the enforcement action] demonstrate[d] that [the declaratory judgment] action [was] not fit for judicial decision and also reduce[d] any hardship posed to Walmart by abstention [in the declaratory judgment action]," while "undermin[ing] the contention that future enforcement is likely."  *Id.* at 311.

In analyzing whether the declaratory judgment action was fit for judicial decision, the Fifth Circuit explained that Walmart had not identified any agency action, much less final agency action. *Id.*  The court also discussed that while "it would be theoretically possible to declare as a matter of law" legal obligations under the Controlled Substances Act, "the question would be easier if the court knew what obligations pharmacies were alleged to have and could therefore assess whether

17

those obligations accorded with the governing regulations." *Id.* Finally, the court considered that the "requested declarations" were not based on "an unequivocally expressed position by the government." *Id.* at 312. The dispute that was fit for judicial review was the enforcement action, which necessarily presented an unequivocally expressed position by the government, not the declaratory judgment action.

The same is true here. Consensys has not identified any agency action, much less final agency action. *See infra* 19-20. And assessing whether Consensys operates as a broker (or has engaged in unregistered offers and sales of securities) cannot be done in the abstract—it requires an intensive factual analysis. For example, Consensys asserts that "the digital asset transactions at issue [with respect to MetaMask] are not securities transactions." Compl. ¶ 87. But the complaint does not identify any of those transactions, much less allege facts demonstrating that such digital-asset transactions could never be securities transactions as a matter of law. The enforcement action, by comparison, identifies specific transactions involving MetaMask and alleges facts demonstrating that they are securities transactions. *See* Ex. C. ¶¶ 129-322.

Finally, the MetaMask count is not based on "an unequivocally expressed position" by the Commission. *Walmart*, 21 F.4th at 312. Rather, it is based on views of "SEC staff" provided during the MetaMask investigation. Compl. ¶ 68. It is the enforcement action complaint that presents the Commission's position on Consensys's alleged unregistered offer and sale of securities and operation as an unregistered broker and is thus fit for judicial decision. Indeed, while much of Consensys's complaint focuses on whether ETH transactions are securities transactions, the enforcement action complaint alleges theories of liability that do not depend on—or even involve—whether ETH transactions are securities transactions but rather concern *separate* assets that are being offered and sold as securities. *See* Ex. C. ¶¶ 129-322.

In analyzing whether withholding judicial consideration would harm the parties, the *Walmart* court concluded that "the existence of the [enforcement action] eliminates, or at least greatly reduces, the hardship that will be placed on Walmart" because "Walmart has the ability to test the government's regulatory position in court by raising its theories as defenses in the [enforcement] action." 21 F.4th at 312-13.  And the court found that because "[t]he government ha[d] made its move" and "it would be unusual for it to bring a second action against the same defendant on similar theories until after the current case is decided," "[t]here [was] no clear or credible threat of future prosecution," which "further undermin[ed] the position that withholding review creates hardship for Walmart." *Id.* at 313.

Again, the same is true here.  Consensys can test the Commission's theories of liability in the enforcement action. "Because the [Commission] has filed an enforcement action that promises to resolve the legality of [Consensys's] conduct, this is not a situation in which a declaratory plaintiff will suffer injury unless legal relations are clarified." *Morgan Drexen, Inc. v. CFPB*, 785 F.3d 684, 698 (D.C. Cir. 2015) (cleaned up).  And Consensys's assertion that it "faces a genuine threat that the SEC will bring an enforcement action related to * * * MetaMask Swaps and Staking" (Compl. ¶ 117) has been overtaken by the filing of that enforcement action.  Thus, even if the MetaMask count was fit for judicial decision, Consensys has failed to demonstrate ripeness because it will not suffer cognizable hardship from court consideration being withheld. *See, e.g.*, *Pearson v. Holder*, 624 F.3d 682, 685 (5th Cir. 2010) ("Even where an issue presents purely legal questions, the plaintiff must show some hardship in order to establish ripeness.") (cleaned up).

### 2.   The MetaMask count is barred by sovereign immunity.

Just as with the ETH counts, the MetaMask count is barred by sovereign immunity. Consensys fails to identify a final agency action, which forecloses any argument that the Commission waived sovereign immunity. *Alabama-Coushatta*, 757 F.3d at 489.  Consensys points to the MetaMask

19

investigation, but, as discussed above (*see supra* 9), "[a]n agency's initiation of an investigation does not constitute final agency action." *Veldhoen*, 35 F.3d at 225.

And even the filing of the MetaMask enforcement action does not provide a basis for jurisdiction here because the filing of a complaint in federal court does not constitute final agency action.  A complaint is "not 'final agency action'" because it represents only "a threshold determination that further inquiry is warranted and that a complaint should initiate proceedings." *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 239-41 (1980); *see also, e.g.*, *City of Oakland v. Holder*, 901 F. Supp. 2d 1188, 1195-96 (N.D. Cal. 2013) ("[T]he filing of the * * * complaint simply initiates a judicial process expressly authorized by statute and requires the Government to carry its burden of establishing that the defendant [violated the law]."), *aff'd sub nom. City of Oakland v. Lynch*, 798 F.3d 1159 (9th Cir. 2015).  And neither the statutory definition of "agency action" in 5 U.S.C. § 551(13) nor caselaw supports the notion that the filing of an agency enforcement action against a defendant in federal court would allow that defendant to sue the agency in a separate declaratory judgment action that seeks to enjoin the enforcement action.  *See supra* 8-9; *Walmart*, 21 F.4th at 311 (concluding that "the pendency of an enforcement action against [the plaintiff in a different court] on theories of liability similar to those [the plaintiff] challenges here * * * demonstrates that this [declaratory judgment] action is not fit for judicial decision").

Finally, even were this Court to consider the filing of the MetaMask enforcement action to constitute final agency action, Section 702's sovereign-immunity waiver would not apply because Consensys would have an adequate remedy, namely defending the enforcement action.  *See* 5 U.S.C. § 704 ("[F]inal agency action for which there is no other adequate remedy in a court [is] subject to judicial review.").

### B.   This Court should exercise its discretion to dismiss the MetaMask count.

Even if the MetaMask count were justiciable, this Court should exercise its discretion to dismiss it.  The Declaratory Judgment Act, 28 U.S.C. § 2201, "has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'"  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2007), quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).  "Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, * * * to dismiss an action seeking a declaratory judgment."  *Wilton*, 515 U.S. at 288.  A court may, for example, dismiss a request for a declaratory judgment based on "the usefulness of the declaratory judgment remedy" or "the fitness of the case for resolution."  *MedImmune*, 549 U.S. at 136.

The Fifth Circuit has identified "seven nonexclusive factors for a district court to consider in deciding whether to decide or dismiss a declaratory action," *Sherwin-Williams*, 343 F.3d at 388, several of which militate for dismissal here (and others of which do not apply).  The factors include "whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant," "whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist," and "whether retaining the lawsuit would serve the purposes of judicial economy."  *Id.*, quoting *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994).  These factors are intended to capture "three aspects of * * * analysis": "the proper allocation of decision-making" between courts; "fairness," or "distinguish[ing] between legitimate and improper reasons for forum selection"; and "efficiency," or "avoid[ing] duplicative or piecemeal litigation where possible."  *Id.* at 390-91.  Here these factors weigh in favor of dismissing the MetaMask count.

The MetaMask count constitutes "improper anticipatory litigation" brought "in anticipation of a lawsuit filed by the [Commission]."  *Id.* at 388, 391; *see, e.g.*, Compl. ¶ 117 ("Consensys faces a genuine threat that the SEC will bring an enforcement action related to * * * MetaMask Swaps and

Staking.").  Indeed, Consensys filed the complaint within three weeks of the SEC staff sending Consensys a Wells notice and stating their intent to recommend that the Commission bring an enforcement action regarding MetaMask Swaps and MetaMask Staking.  *See supra* 4.  "Courts take a dim view of declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff'" because "[a]llowing declaratory actions in these situations can deter settlement negotiations and encourage races to the courthouse."  *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004).  The Fifth Circuit agrees that "a race to the courthouse represent[s] a misuse of the Declaratory Judgment Act."  *Pontchartrain Partners, L.L.C. v. Tierra de Los Lagos, L.L.C.*, 48 F.4th 603, 606 (5th Cir. 2022) (cleaned up).  And the MetaMask count is an improper attempt to force the Commission to litigate the legal status of MetaMask Swaps and MetaMask Staking as the defendant rather than as the plaintiff.  *See, e.g.*, *Agri-Trans Corp. v. Gladders Barge Line, Inc.*, 721 F.2d 1005, 1011 (5th Cir. 1983) ("A declaratory judgment action should not be used to circumvent the usual progression of administrative determination and judicial review."); *Groos Nat'l Bank v. Comptroller of Currency*, 573 F.2d 889, 895 (5th Cir. 1978) (upholding dismissal of a declaratory judgment action based on a "detailed framework for regulatory enforcement and for orderly review of the various stages of enforcement").

In addition, in light of the pending enforcement action in the E.D.N.Y., this Court's discretionary adjudication of the MetaMask count would threaten to upset the proper allocation of decision-making among federal courts.  "The federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs," and "to avoid rulings which may trench upon the authority of sister courts."  *W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Atl. & Gulf Coast Dist. of ILA*, 751 F.2d 721, 728-29 (5th Cir. 1985).  Were this Court to elect to adjudicate the

MetaMask count, it would risk the two courts "intrud[ing]" on each other's "decisional authority." *Id.* at 731.

It would also create inefficiency. Federal courts should "avoid the waste of duplication * * * and * * * avoid piecemeal resolution of issues that call for a uniform result." *Id.* at 729. Requiring Consensys to litigate the legal status of MetaMask in the enforcement action ensures that only those legal theories that the Commission has chosen to pursue are adjudicated and that they are adjudicated with necessary factual development. *See Moore v. Sims,* 442 U.S. 415, 427 (1979) (explaining that "[t]he breadth of a challenge * * * militate[s] in favor of abstention") (emphasis omitted). And it would be all the more efficient given that all the other counts in this action should be dismissed (*see supra* 7-16) and that this action will not necessarily be subject to consolidation or coordination with the enforcement action. *See* 15 U.S.C. § 78u(g) (requiring Commission consent to consolidate or coordinate other actions with Commission actions seeking equitable relief).

Finally, it is "the basic doctrine of equity jurisprudence that courts of equity should not act * * * when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger v. Harris,* 401 U.S. 37, 43-44 (1971). And therefore a court may "in its discretion dismiss a declaratory judgment or injunctive suit if the same issue is pending in litigation elsewhere." *Abbott Lab'ys v. Gardner,* 387 U.S. 136, 155 (1967); *see, e.g., Morgan Drexen,* 785 F.3d at 694 (affirming the dismissal of a declaratory judgment action based on a pending enforcement action); *Ven-Fuel, Inc. v. Department of the Treasury,* 673 F.2d 1194, 1195 (11th Cir. 1982) (same).

## III.     Alternatively, this Court should transfer this case to the E.D.N.Y.

To the extent this Court concludes that it has subject-matter jurisdiction and that the complaint should not be dismissed in its entirety, this Court should transfer what remains of this case to the E.D.N.Y., in which the MetaMask enforcement action is pending, pursuant to 28 U.S.C.

§ 1404(a). Under Section 1404(a), a court may transfer a case if: "(1) the action could have been brought in the transferee court and (2) the convenience of the parties and witnesses and the interest of justice weigh in favor of transfer." *Kuykendall v. Amazon Studios LLC*, No. 5:20-cv-219, 2022 WL 19337991, at *2 (S.D. Tex. Mar. 18, 2022). The decision whether to transfer is an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen, v. Barrack*, 376 U.S. 612, 622 (1964). A court has "broad discretion in deciding whether to order a transfer." *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 311 (5th Cir. 2008) (en banc) (cleaned up). Both factors favor transfer here.

First, assuming without conceding that a court could have subject-matter jurisdiction over this case, venue would be proper in the E.D.N.Y. *See Epstein v. Gray Television, Inc.*, No. 3:06-cv-431, 2007 WL 295632, at *3 (W.D. Tex. Jan. 5, 2007) ("A federal district court is a forum in which suit 'might have been brought' if both jurisdictional and venue requirements are satisfied."). Under 28 U.S.C. § 1391(e)(1)(B), venue would be proper in the E.D.N.Y. because: (1) defendants are a United States agency and its officers in their official capacities; and (2) the complaint's claims concern the Commission's investigation of Consensys at a time when Consensys was based in the E.D.N.Y. Ex. C ¶ 20 ("Prior to February 2024, Consensys was based in Brooklyn, New York, and still maintains offices in Brooklyn.").

Second, the interests of justice weigh in favor of transferring this case because, as explained above (*see supra* 6-7, 21-22), (1) Consensys brought the MetaMask count as an improper anticipatory litigation after Commission staff notified Consensys that the staff intended to recommended action, and (2) the MetaMask count involves the same issues that are currently being litigated in the MetaMask enforcement action. Moreover, this Court's adjudication of the MetaMask count—while the Commission's enforcement action over the same issues is pending in the E.D.N.Y.—would upset principles of comity, risk intruding on each court's decisional authority, and waste judicial and party resources. *See supra* 22-23. "To permit a situation in which two cases involving precisely the

24

same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." *Kuykendall,* 2022 WL 19337991, at *7, quoting *Cont'l Grain Co. v. The FBL-585,* 364 U.S. 19, 26 (1960) (granting a motion to transfer venue where a matter pending in another district concerned the same issues). For these reasons, "[w]here related litigation is pending in the transferee court, the 'interest of justice' may dictate transfer notwithstanding any inconvenience to the parties and witnesses." *Doubletree Partners, LP v. Land Am. Am. Title Co.,* No. 3:08-cv-1547, 2008 WL 5119599, at *6 (N.D. Tex. Dec. 3, 2008).

Finally, transfer to the E.D.N.Y. would not prejudice Consensys, which is a well-resourced company that has already retained the same sophisticated counsel to represent it in both actions. Moreover, as noted above, Consensys currently has offices in Brooklyn. Further, the conduct alleged in the MetaMask enforcement action, which overlaps with the issues raised by the MetaMask count, occurred substantially during the period when Consensys was based in Brooklyn. Thus, for the reasons set forth above, the interests of justice support transfer of this action to the E.D.N.Y.

## CONCLUSION

The complaint should be dismissed for lack of subject-matter jurisdiction and for failure to state a claim. Alternatively, to the extent this Court concludes that it has subject-matter jurisdiction and that the complaint should not be dismissed in its entirety, it should transfer venue of what remains of this case pursuant to 28 U.S.C. § 1404(a) to the E.D.N.Y.

Dated: July 24, 2024                           Respectfully submitted,


*/s/ Jason J. Rose*                            Jeffrey A. Berger*
Jason J. Rose                                  Illinois Bar No. 6282511
Texas Bar No. 24007946                         Ezekiel L. Hill*
Securities and Exchange Commission             D.C. Bar No. 1684647
801 Cherry Street, Suite 1900                  David D. Lisitza*
Fort Worth, Texas 76102                        California Bar No. 225824
(817) 978-1408 (phone)                         Securities and Exchange Commission
(817) 978-4927 (facsimile)                     100 F Street NE
rosej@sec.gov                                  Washington, DC 20549
                                               (202) 551-5100 (phone)
                                               bergerje@sec.gov
Samuel Wasserman*                              hillez@sec.gov
New York Bar No. 4830634                        lisitzad@sec.gov
Ben Kuruvilla*
New York Bar No. 4700258
Securities and Exchange Commission             Marc Jones*
100 Pearl St.                                  Massachusetts BBO #645910
Suite 20-100                                   Securities and Exchange Commission
New York, NY 10004                             33 Arch Street
(212) 336-1100 (phone)                         24th Floor
wassermans@sec.gov                             Boston, MA 02110
kuruvillabe@sec.gov                            (617) 573-8900 (phone)
                                               jonesmarc@sec.gov


*Counsel for Defendants*

* Not admitted in N.D. Tex.  *Pro hac vice* motions forthcoming or pending.

26

## CERTIFICATE OF CONFERENCE

On July 23 and 24, 2024, counsel for defendants conferred with counsel for plaintiff regarding defendants' motion in the alternative to transfer venue of this case to the U.S. District Court for the Eastern District of New York.  Counsel for plaintiff indicated that plaintiff is opposed to the requested relief.

*/s/ Jason J. Rose*
Jason J. Rose

## CERTIFICATE OF SERVICE

I affirm that on July 24, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court for the Northern District of Texas, Fort Worth Division, by using the CM/ECF system which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Jason J. Rose*
Jason J. Rose