**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| CONSENSYS SOFTWARE INC.,<br><br>                                        *Plaintiff,*<br><br>        v.<br><br>GARY GENSLER, Chair of the U.S. Securities and Exchange Commission; CAROLINE A. CRENSHAW, JAIME LIZÁRRAGA, MARK T. UYEDA, AND HESTER M. PEIRCE, each a Commissioner of the U.S. Securities and Exchange Commission; and U.S. SECURITIES AND EXCHANGE COMMISSION,<br><br>                                        *Defendants.* | No. 4:24-cv-00369-O |

## CONSENSYS SOFTWARE INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR TRANSFER

WACHTELL, LIPTON,
  ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000

WICK PHILLIPS
  GOULD & MARTIN, LLP
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone: (817) 332-7788
Facsimile: (817) 332-7789

Dated: August 16, 2024

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................1

BACKGROUND ...................................................................................................4

    A.    Blockchains and digital assets .............................................4

    B.    Consensys's business ...........................................................5

    C.    The SEC's investigations of Consensys ...............................6

    D.    Consensys commences litigation to remove the overhang of the SEC's regulatory overreach .......................................8

ARGUMENT ......................................................................................................10

I.     THE SEC RESPONSE TO THE COMPLAINT CONFIRMS THAT ITS TERMINATION OF THE ETH INVESTIGATION MOOTED THE ETH COUNTS ......................................................................10

II.    THE MOTION TO DISMISS THE METAMASK COUNT SHOULD BE DENIED..................................................................................11

    A.    This Court has jurisdiction over the MetaMask count............11

          1.    The MetaMask count is not barred by sovereign immunity ......................................................................11

          2.    The MetaMask count is not barred by the ripeness doctrine .......................................................................14

    B.    This Court should retain jurisdiction over the MetaMask claim .............................17

III.   THE REQUEST TO TRANSFER THIS ACTION TO NEW YORK SHOULD BE DENIED ..............................................................19

CONCLUSION...................................................................................................21

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Abbott Lab'ys* v. *Gardner,*
    387 U.S. 136 (1967)......................................................................................15, 16 n.7

*Agri-Trans Corp.* v. *Gladders Barge Line, Inc.,*
    721 F.2d 1005 (5th Cir. 1983) ......................................................................18 n.9

*Ala.-Coushatta Tribe of Tex.* v. *United States,*
    757 F.3d 484 (5th Cir. 2014) .......................................................................11, 12, 13

*Bear Creek Bible Church* v. *EEOC,*
    571 F. Supp. 3d 571 (N.D. Tex. 2021), *aff'd in part sub nom.*
    *Braidwood Mgmt., Inc.* v. *EEOC,* 70 F.4th 914 (5th Cir. 2023)................................11, 12, 13

*Braidwood Mgmt., Inc.* v. *EEOC,*
    70 F.4th 914 (5th Cir. 2023) ......................................................................13, 14, 15, 16

*Buckley* v. *Valeo,*
    424 U.S. 1 (1976)..............................................................................................14

*Clarke* v. *CFTC,*
    74 F.4th 627 (5th Cir. 2023) .......................................................................12, 12 n.4

*Collin Cty.* v. *Homeowners Ass'n for Values Essential to Neighborhoods,*
    915 F.2d 167 (5th Cir. 1990) ....................................................................13

*DM Arbor Ct., Ltd.* v. *City of Houston,*
    988 F.3d 215 (5th Cir. 2021) .............................................................14, 14 n.6, 15

*FTC* v. *Standard Oil Co. of California,*
    449 U.S. 232 (1980)..........................................................................................12

*Gen'l Electric Cap'l Corp.* v. *Daystone Int'l Corp.,*
    2010 WL 11618844 (N.D. Tex. Jan. 6, 2010) ....................................19, 20, 20 n.11

*Groos Nat'l Bank* v. *Comptroller of Currency,*
    573 F.2d 889 (5th Cir. 1978) .......................................................................18 n.9

*In re Salubrio, L.L.C.,*
    2023 WL 3143686 (5th Cir. Apr. 28, 2023) .......................................................14

*In re Volkswagen of Am. Inc.,*
    545 F.3d 304 (5th Cir. 2008) .................................................................20

*Lexmark Int'l, Inc.* v. *Static Control Components, Inc.,*
    572 U.S. 118 (2014)..........................................................................................14

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians* v. *Patchak*,
    567 U.S. 209 (2012)........................................................................................................11 n.2

*Neese* v. *Becerra*,
    640 F. Supp. 3d 668 (N.D. Tex. 2022) ................................................................................13

*Pontchartrain Partners, L.L.C.* v. *Tierra de Los Lagos, L.L.C.*,
    48 F.4th 603 (5th Cir. 2022) ..............................................................................................17

*Rosedale Missionary Baptist Church* v. *New Orleans City*,
    641 F.3d 86 (5th Cir. 2011) .............................................................................................14 n.6

*Save Power Ltd.* v. *Syntek Fin. Corp.*,
    121 F.3d 947 (5th Cir. 1997) ..............................................................................................19

*Seattle Pac. Univ.* v. *Ferguson*,
    104 F.4th 50 (9th Cir. 2024) ...............................................................................................14

*SEC* v. *Coinbase, Inc.*,
    2024 WL 1304037 (S.D.N.Y. Mar. 27, 2024) .............................................................2, 12 n.3

*SEC.* v. *Kearns*,
    2009 WL 2030235 (S.D.N.Y. July 14, 2009) .......................................................................19

*Sherwin-Williams Co.* v. *Holmes County*,
    343 F.3d 383 (5th Cir. 2003) ..............................................................................................17

*Silver Line Bldg. Prod. LLC* v. *J-Channel Indus. Corp.*,
    12 F. Supp. 3d 320 (E.D.N.Y. 2014) ................................................................................19 n.10

*Susan B. Anthony List* v. *Driehaus*,
    573 U.S. 149 (2014)............................................................................................................14

*Texas* v. *United States Dep't of Homeland Sec.*,
    88 F.4th 1127 (5th Cir. 2023), *vacated on other grounds*,
    144 S. Ct. 715 (2024)...................................................................................................11 n.2, 13

*Walmart Inc.* v. *DOJ*,
    21 F.4th 300 (5th Cir. 2021) .......................................................................................11 n.2, 15, 16

*Whitman* v. *Am. Trucking Ass'ns*,
    531 U.S. 457 (2001)............................................................................................................12

**Statutes and Rules**

5 U.S.C. § 551........................................................................................................12, 12 n.4

5 U.S.C. § 702.......................................................................................................... *passim*

5 U.S.C. § 704 .................................................................................................................13, 13 n.5

28 U.S.C. § 2201 .....................................................................................................................13

**Other Authorities**

RICHARD FALLON ET AL.,
    HART & WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 902
    (7th ed. 2015) .................................................................................................................11 n.2

## INTRODUCTION

Plaintiff Consensys, a leading blockchain software developer with headquarters in Fort Worth, brought this action to seek urgent relief from the SEC's unlawful regulatory land grab, part of the agency's wide-ranging campaign to dictate the future of crypto on its chosen terms, timing, and turf.

1.      For years, the SEC openly acknowledged its lack of authority to regulate digital asset trading platforms and assured the marketplace that the two largest crypto tokens — bitcoin and ETH — were *not* securities. And it never once suggested that the ubiquitous "wallet" software that helps everyday consumers to hold, transfer, and transact in digital assets implicated the securities laws. But in 2021, a new Administration brought with it a new SEC Chair, defendant Gary Gensler, and a new regulatory agenda. Shunning notice-and-comment rulemaking, through a series of unlawful investigations and enforcement actions the SEC sought to arrogate to itself unprecedented powers to regulate digital assets, the platforms on which they trade, and blockchain-related services and applications. In its bid to control this new technology, the SEC trained its sights on Consensys — its transactions in ETH and its leading software product, "MetaMask."

MetaMask is wallet software used by millions of people to access their digital assets and use them on the decentralized web. The MetaMask software embodies the core promise of crypto — leveraging blockchain technology to eliminate the human middleman, permitting individual users to transact directly and securely with one another through automated software programs without the need for a financial intermediary. The SEC seeks to insert itself into this crypto architecture with a claim of regulatory authority that is supported by neither law nor common sense. It contends that through the MetaMask software, Consensys acts as a securities broker and offers and sells securities. This charge is absurd: MetaMask is simply an interface — like a web browser — that fetches and displays information aggregated from various third-party applications, and translates and transmits user instructions to those third parties, thereby allowing crypto holders to seamlessly interact with

blockchain networks and their services. MetaMask neither holds customers' digital assets nor executes their transactions. No court has found anything like the MetaMask wallet software to be a broker or offeror of securities. To the contrary, in March of this year, a court rejected the SEC's near-identical claims against substantially similar software. *SEC* v. *Coinbase, Inc.*, 2024 WL 1304037, at *35 (S.D.N.Y. Mar. 27, 2024).

2.      Faced with the SEC's unlawful ongoing investigations and the threat of enforcement, Consensys brought this action seeking injunctive and declaratory relief relating to its transactions in ETH and its MetaMask software, to clear the considerable uncertainty and risk to its business resulting from the SEC's regulatory overreach. Consensys then moved for a Rule 16 schedule for a prompt and efficient adjudication of its claims. The Court ordered that schedule, providing for the August 16 completion of discovery, with dispositive motions set to be filed on September 20.

As to the ETH claims, the SEC retreated after the filing of this lawsuit: it terminated its investigation into Consensys's transactions in ETH and now reports to the Court that it has given Consensys the relief sought in Counts I-III of the Complaint. Consensys agrees that, in the face of the SEC's stand-down, Counts I-III require no further action and are now moot.

As to the MetaMask claim, the SEC tried to change the playing field. Two months after this litigation commenced, and while Consensys's scheduling motion was pending, the SEC launched an enforcement action against Consensys — not in this Court, but in the Eastern District of New York (the "New York action"). The SEC now moves to dismiss the remainder of Consensys's Complaint, contending that this Court lacks jurisdiction and that, in any case, it should exercise discretion to dismiss or transfer the case in favor of the New York action.

3.      The SEC's motion should be denied. First, controlling case law in this Circuit exposes as meritless the SEC's challenge to the Court's jurisdiction on grounds of sovereign immunity and

-2-

ripeness. Sovereign immunity is waived under § 702 of the APA where, as here, plaintiff seeks only non-monetary relief and has been adversely affected by agency action. And Consensys's claim is plainly ripe: it is not contingent on future events or unknown positions of the SEC. At issue is the SEC's position that the federal securities laws apply to MetaMask software about which there are no facts in genuine dispute. And it is further ripe because Consensys faces continued uncertainty and harm to its business — imperiling its leading software product and impeding key operations, from hiring to product development — if that question is not resolved promptly here.

Second, the Court should decline to exercise its discretion to dismiss or stay this case in favor of the New York court. This action was first-filed; absent compelling circumstances, this Court should decide the issues. Moreover, Consensys has a strong interest in having fundamental threats to its business adjudicated in this District, where its headquarters are located. Discovery related to Consensys's motion for summary judgment is already complete, and the parties are a month away from briefing that dispositive motion under the Court's schedule. The most efficient and orderly course is for this action to proceed to adjudication.

Finally, while defendants complain about upsetting principles of comity and the waste of judicial and party resources if this action proceeds in parallel with the New York action, these complaints ring hollow. The SEC could have filed its enforcement action in this District and consolidated it with this action, so that all of the parties' pending claims could be litigated together, in one forum. It instead has sought to escape this Court's scheduled adjudication of the MetaMask claim, by interposing weak jurisdictional objections and by filing suit a thousand miles away, in a New York courthouse, triggering duplicative proceedings. That later-filed litigation provides no basis to disrupt the orderly disposition of this action in this Court.

## BACKGROUND

### A.    Blockchains and digital assets

Consensys, a company headquartered in Fort Worth, is a leading developer of blockchain software solutions. Dkt. 1 ("Compl.") ¶ 17. Consensys's products help individual users and enterprises build and use next-generation web applications and participate in the decentralized web. *Id.* ¶ 38.

A blockchain is a peer-to-peer electronic ledger or database maintained on a decentralized basis by a vast, diffuse network of individual computers. *Id.* ¶ 26. Unlike traditional ledgers that record transactions, a blockchain ledger is "distributed" in the sense that it is shared and instantly synchronized across multiple computers, with public copies of the updated ledger instantly accessible by multiple users at the same time. *Id.* Because numerous mirror copies of the blockchain are maintained across distinct computers, the blockchain is "decentralized": There is no single point of failure and no single point of access or control. *Id.* ¶¶ 26-27. Blockchain technology has been utilized by individuals and enterprises to secure financial transactions, manage supply chains, issue stablecoins, store data, and verify identities, among other applications. *Id.* ¶ 27.

Every blockchain has its own "native" "token" — also referred to as a "digital asset," "cryptoasset," or "cryptocurrency." *Id.* ¶ 28. These tokens give holders the ability to perform actions on the blockchain, such as accessing an application or transferring ownership of digital assets. The blockchain records ownership of tokens by associating them with public alphanumeric addresses. *Id.* The owner holds a unique "private key" that allows them to transact using the tokens associated with that address. *Id.*

The transactions on a public blockchain are confirmed by the participants in that blockchain's verification process or "consensus mechanism." *Id.* ¶ 29. Blockchains generally employ one of two consensus mechanisms: "proof of work" or "proof of stake." *Id.* As relevant to the instant action, in a proof-of-stake network, validators "stake" some of their blockchain tokens — posting the tokens as a

performance bond — while they verify new transactions proposed to be added to the blockchain. *Id.* ¶ 30. Validators earn additional tokens as a fee for validating other users' transactions and maintaining consensus as to the history of transactions on the blockchain. *Id.*

The first major blockchain network, Bitcoin, was invented in 2008. *Id.* ¶ 31. Until recently, the sole function of the Bitcoin network was to record transactions in its native token, bitcoin, allowing holders of that token to use it as a medium of exchange and store of value. *Id.* Another major digital asset network, Ethereum, was launched in 2015. Ethereum was developed to expand the distributed ledger concept of Bitcoin and other blockchains to applications beyond money. *Id.* ¶ 34. Ethereum enables anyone to develop and run automated software programs stored on the blockchain — known as "smart contracts" — while maintaining a permanent record of all transactions on the network. *Id.*

### B.     Consensys's business

Consensys develops software products for blockchains, including Ethereum. *Id.* ¶¶ 38-39. Ethereum is therefore critical to Consensys's mission. *Id.* ¶ 39. So too is ETH, Ethereum's native token. The consumers and developers that use Consensys's software for Ethereum must use ETH to transact on the blockchain. *Id.* And Consensys holds ETH in the ordinary course of its business, including as payment for its offerings. *Id.*

Consensys's software products include MetaMask. *Id.* ¶ 40. MetaMask is free "wallet" software that facilitates access to users' crypto tokens — technically, by enabling users to store and access the "private key" for a blockchain wallet address associated with their tokens, thus empowering users to directly control the assets held in such addresses without the need for a third-party custodian or intermediary. *Id.* The MetaMask wallet software is "non-custodial," which means that the software provides the user — and only the user, not Consensys — with access to the private key, which is stored locally on the user's device.

-5-

As part of its functionality, MetaMask provides a simple interface to allow users to communicate with, and thereby undertake transactions on, blockchain-based services and applications, many of which run on the Ethereum network. *Id.* ¶ 41. Transacting on blockchains requires composing and encrypting instructions in computer code. *Id.* The wallet software enables users to avoid having to manually compose those instructions: it provides users with an intuitive interface to input instructions that are then formatted into the appropriate code — that is, the software translates the user instructions into code — and then forwards those transaction instructions to the blockchain. *Id.* Two core features of this software are MetaMask Swaps and MetaMask Staking. *Id.* ¶ 42.

**MetaMask Swaps** allows users to communicate with third-party applications that enable one digital asset token to be swapped for another. MetaMask Swaps allows a user to see pricing information (i.e., rates of exchange) for digital asset token pairs from decentralized exchanges ("DEXs"), third-party aggregators, and private market makers and communicates the user's commands to those third parties to carry out transactions. *Id.* ¶ 43.

**MetaMask Staking** allows users to communicate with two third-party applications, Lido and Rocket Pool, which offer "liquid staking services" that enable users to stake their ETH for the purpose of validating transactions on the Ethereum blockchain. When a user stakes ETH through Lido or Rocket Pool, they receive in return a Lido or Rocket Pool token, like a digital receipt, that reflects their staked tokens. *Id.* ¶ 46.

## C.     The SEC's investigations of Consensys

On April 4, 2022, Consensys received a letter from the SEC's Division of Enforcement advising it that the staff was "conducting an investigation" of MetaMask. *Id.* ¶ 66. The SEC requested that Consensys voluntarily provide answers to a number of broad requests for information regarding MetaMask, including MetaMask Swaps. *Id.* The SEC made additional requests for information by letter and on calls. Consensys diligently cooperated throughout this period, at significant effort and

expense, providing a detailed account of certain of its software products and operations. *Id.*

On September 21, 2022, Consensys received another letter from the SEC staff advising that the agency was investigating certain staking protocols on the Ethereum blockchain network and requesting information. *Id.* ¶ 67. Although the SEC did not initially indicate that Consensys was a target of this investigation, subsequent SEC letters and communications zeroed in on MetaMask Staking. *Id.* As with the SEC staff's separate investigation into MetaMask Swaps, Consensys diligently cooperated at significant expense. *Id.* In all, Consensys produced tens of thousands of pages of documents in response to the MetaMask Swaps and Staking investigations.

During this same period, the SEC also sought to appoint itself the regulator of ETH. *Id.* ¶ 69. For years, the SEC and the CFTC openly acknowledged, and the public understood, that ETH was not a security and fell outside the SEC's regulatory domain. *Id.* ¶¶ 50-62. But beginning in early 2023, the SEC backtracked. In April 2023, the SEC affirmed the issuance of a Formal Order of Investigation in the matter of "Ethereum 2.0" (the "Formal Order"), empowering the SEC staff to investigate and subpoena individuals and entities involved in the buying or selling of ETH. *Id.* ¶ 71. The SEC issued numerous subpoenas pursuant to its Formal Order, and Consensys itself received three subpoenas containing two dozen distinct requests for information, many comprising several detailed sub-requests. *Id.* ¶ 72. The SEC staff communicated to Consensys that the agency was investigating whether Consensys's current offers and sales of ETH — transactions carried out from its own holdings as part of its normal treasury operations — violated the securities laws. *Id.* ¶ 73. As with the SEC staff's investigation into MetaMask, Consensys again diligently cooperated at significant expense. Consensys made at least eight document productions, totaling over 88,000 pages. *Id.* ¶ 72.

On February 14, 2024, the SEC staff told Consensys's counsel that it had reached a determination that MetaMask Swaps and Staking violated the securities laws and that the staff intended

to issue a "Wells notice." The SEC staff said the investigation into Consensys's ETH transactions was on a separate track and gave no timeline for its conclusion. On April 10, the SEC staff sent Consensys a Wells notice stating its intent to recommend that the Commission bring an enforcement action against Consensys for violating the federal securities laws through its MetaMask Swaps and MetaMask Staking products. *Id.* ¶ 68. In a telephone conference that same day, the SEC staff stated its view that Consensys, by operating the MetaMask Swaps software, is an unregistered broker in violation of Section 15(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). The SEC staff also stated its view that, through MetaMask Staking, Consensys violates both Sections 5(a) and 5(c) of the Securities Act of 1933 (the "Securities Act") by engaging in the offer and sale of unregistered securities and violates Section 15(a) of the Exchange Act by acting as an unregistered broker. *Id.*

The SEC staff did not say when they expected to seek the Commission's approval to bring an enforcement action, when that enforcement action might be filed, and in which jurisdiction the SEC might bring that litigation.

### D. Consensys commences litigation to remove the overhang of the SEC's regulatory overreach

The SEC's targeting of Consensys's transactions in ETH and its MetaMask software is part of the SEC's broader anti-crypto crusade undertaken during defendant Gary Gensler's tenure as Chair. *Id.* ¶¶ 63-65. Consensys disputes that ETH is a security or that MetaMask undertakes broker activities or is otherwise subject to regulation by the SEC. None of the digital asset transactions carried out by a user with the aid of MetaMask involves securities. And even if they did, the role of MetaMask Swaps and Staking is merely to fetch information requested by a user from public sources across the decentralized web and then to format and forward that user's instructions to third-party applications and services — that is, MetaMask Swaps and Staking are aggregation, translation, and messaging services, not securities brokers. *Id.* ¶¶ 86-90.

To clear the cloud of SEC scrutiny over its business, on April 25, 2024, Consensys commenced this action, seeking injunctive and declaratory relief from the SEC's unlawful assertion of authority relating to its ETH transactions and its MetaMask software. Dkt. 1. A flurry of further procedural activity has teed up the MetaMask claim for this Court's prompt adjudication:

- Almost two months after Consensys filed its Complaint, the SEC sent Consensys a letter on June 18 stating that it had terminated the ETH Investigation and would not pursue an enforcement action against Consensys. Dkt. 38-1. Three days later, on June 21, SEC staff confirmed their intent to recommend an enforcement action related to MetaMask. Dkt. 38-6.

- On June 25, the SEC moved for an extension of its time to respond to the Complaint. Dkt. 26. That same day, seeking a prompt adjudication of this action, Consensys moved for a Rule 16 schedule, providing for a single round of dispositive motions after completion of targeted discovery. Dkt. 27.

- Defendants responded to Consensys's motion on June 27, confirming they did "not oppose simultaneous briefing in a single round of dispositive motions . . . along the lines of the schedule described in plaintiffs' motion." Dkt. 28 at 2 (quotation omitted) ("[D]efendants are amenable to a briefing schedule akin to *LEJILEX*."). Defendants did not mention any plan to file a New York enforcement action challenging MetaMask, much less suggest that any such action would disrupt the schedule in this case. *See id.*

- On June 28, the SEC sued Consensys in the Eastern District of New York, alleging that Consensys's MetaMask Swaps software is an unregistered securities broker and that its MetaMask Staking software offers and sells unregistered securities and acts as an unregistered broker.

- On July 1, this Court entered a Rule 16 scheduling order, Dkt. 30, finding the "most efficient course" for this action would be "to consider in tandem the briefing on any dispositive motions." *Id.* The Court entered the schedule requested by Consensys: requiring defendants' Answer to be filed on or before July 29, 2024; discovery on limited issues to be presented for dispositive motion to be completed by August 16, 2024; and opening briefs on dispositive motions to be filed on or before September 20, 2024. *Id.* Defendants did not seek reconsideration of that order.

- On July 3, defendants filed a notice of the related New York action. Dkt. 31. Defendants did not suggest in that notice that the filing of the New York action should upset the schedule or viability of the action in this Court.

Since July, the parties have gone to significant effort to complete discovery in advance of the Court-ordered August 16 deadline. During that period, Consensys produced over 150,000 pages of documents, responded to 21 interrogatories, and responded to 233 requests for admission. Consensys

also provided a full day of testimony from a Rule 30(b)(6) witness on 21 topics requested by the SEC related to the core issues in the action.

While discovery was proceeding, on July 24, defendants moved to dismiss under Rules 12(b)(1) and 12(b)(6) or in the alternative to transfer venue to New York pursuant to 28 U.S.C. § 1404(a). Dkt. 37. Defendants also moved to amend the Court-ordered schedule, including to stay all proceedings in deference to the New York court. Dkt. 38. On July 31, Consensys filed an opposition to the motion to amend the schedule. Dkt. 40. On August 8, the Court denied in part and granted in part defendants' motion to amend the schedule, ordering a response to defendants' motion to dismiss or transfer by August 16 but otherwise preserving the Court's prior schedule. Dkt. 42.

## ARGUMENT

## I.     THE SEC RESPONSE TO THE COMPLAINT CONFIRMS THAT ITS TERMINATION OF THE ETH INVESTIGATION MOOTED THE ETH COUNTS

Counts I through III of the Complaint all concern the SEC's unlawful exercise of authority over ETH, including through the "Ethereum 2.0" Formal Order and the resulting investigation into Consensys's transactions in ETH. Compl. ¶¶ 91-114. After Consensys commenced this action, the SEC staff notified Consensys that it had terminated its investigation into Consensys's transactions in ETH and did not intend to recommend an enforcement action against Consensys. Dkt. 37-1. And in their recent response to the Complaint, Defendants conceded that the termination of the Ethereum 2.0 investigation "gives Consensys the relief it requests on Counts I-III." Dkt. 38 at 7. Consensys therefore agrees that Count I-III are now moot.[1]

---

[1]     Consensys disputes the other grounds raised by defendants to dismiss the ETH counts, including based on the controlling law Consensys describes below with respect to the MetaMask claim, but the Court need not reach any of those issues as to the now-moot ETH counts.

## II.     THE MOTION TO DISMISS THE METAMASK COUNT SHOULD BE DENIED

### A.     This Court has jurisdiction over the MetaMask count

To escape this Court's adjudication of the remaining MetaMask count, defendants claim to identify jurisdictional obstacles that mandate dismissal of the Complaint. Controlling law dooms their arguments.

### 1.     The MetaMask count is not barred by sovereign immunity

Defendants argue — albeit only secondarily, after first invoking the doctrine of prudential ripeness — that this Court lacks jurisdiction because the MetaMask count is barred by sovereign immunity. Defs. Br. 19-20. But as this Court noted in *Bear Creek*, to establish waiver of sovereign immunity pursuant to Section 702 of the APA, plaintiff must only (1) "identify some 'agency action' affecting him in a specific way" and (2) have "'suffered legal wrong because of the challenged agency action, or [be] adversely affected or aggrieved by that action within the meaning of a relevant statute.'" *Bear Creek Bible Church* v. *EEOC*, 571 F. Supp. 3d 571, 599 (N.D. Tex. 2021) (O'Connor, J.) (cleaned up) (quoting *Ala.-Coushatta Tribe of Tex.* v. *United States*, 757 F.3d 484, 489 (5th Cir. 2014)), *aff'd in part sub nom. Braidwood Mgmt., Inc.* v. *EEOC*, 70 F.4th 914 (5th Cir. 2023).[2] Both requirements are plainly met here.

As to the first requirement, Consensys has identified multiple SEC actions that satisfy the

---

[2]     As amended in 1976, the APA waives "the Federal Government's immunity from a suit 'seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority.'" *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians* v. *Patchak*, 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702). The amendment's "purpose was to eliminate the sovereign immunity defense in all equitable actions for specific relief against a Federal agency or officer acting in an official capacity." *Texas* v. *United States Dep't of Homeland Sec.*, 88 F.4th 1127, 1134 (5th Cir. 2023), *vacated on other grounds*, 144 S. Ct. 715 (2024) (cleaned up). Consistent with this purpose, the Fifth Circuit has held that "[s]ection 702's plain terms waive sovereign immunity for 'any suit' seeking nonmonetary relief in federal court." *Id.* (quoting RICHARD FALLON ET AL., HART & WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 902 (7th ed. 2015)). Arguably, it follows that the Fifth Circuit has now accepted the position of "[m]ost circuits . . . that sovereign immunity is waived in all suits seeking equitable, nonmonetary relief against an agency," regardless of whether the plaintiff challenges a particular agency action. *Walmart Inc.* v. *DOJ*, 21 F.4th 300, 307 (5th Cir. 2021); *see also Texas*, 88 F.4th at 1134 n.6 (stating that the Fifth Circuit's "view [in *Alabama-Coushatta Tribe*] is entirely consistent with reading the second sentence of § 702 to waive immunity for any nonmonetary claim, state or federal, as our sister circuits do").

"broad sweep" of the term "agency action" — which "is meant to cover comprehensively every manner in which an agency may exercise its power." *Clarke* v. *CFTC*, 74 F.4th 627, 637 (5th Cir. 2023) (quoting *Whitman* v. *Am. Trucking Ass'ns*, 531 U.S. 457, 478 (2001)); *see also* 5 U.S.C. § 551(13) ("agency action" includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act"). These agency actions include: (i) the Wells notice to Consensys, confirming the SEC staff would pursue an agency enforcement action against Consensys, Compl. ¶ 68; and (ii) the SEC enforcement action in New York against the largest U.S. cryptocurrency exchange, Coinbase, challenging substantially similar crypto wallet software, Compl. ¶¶ 64, 88.[3] *See Bear Creek*, 571 F. Supp. 3d at 599 (confirming "agency action" in "deni[al of] relief" to another party); *FTC* v. *Standard Oil Co. of California*, 449 U.S. 232, 239 n.7 (1980) (a "complaint [filed] by the Commission is 'a part of a final disposition' *and therefore is 'agency action.'*" (emphasis added)).[4]

    Nor can it be seriously disputed that Consensys has been "adversely affected" by these SEC actions. *Ala.-Coushatta Tribe*, 757 F.3d at 489. The Wells notice and now the New York action directly challenge Consensys's business, threatening its leading software product and impeding key operations that include hiring and product development. And because Consensys had "demonstrated a credible fear of enforcement based on the [SEC's] action against [Coinbase]," it has been "adversely affected or aggrieved by that action." *Bear Creek*, 571 F. Supp. 3d at 599.

    To escape this controlling law, defendants wrongly invoke the Fifth Circuit's decision in *Alabama-Coushatta Tribe* to argue that Section 702 waiver applies only where the plaintiff has "identified a *final* agency action that caused it legal wrong." Defs. Br. 8 (emphasis added); *see also id.*

---

[3]    *SEC* v. *Coinbase, Inc.*, 2024 WL 1304037, at *35 (S.D.N.Y. Mar. 27, 2024).

[4]    *See also Clarke*, 74 F.4th at 637-38 ("no action letter," reflecting "*staff's* recommendation to the agency" not to pursue an enforcement action, was a "license" within the meaning of 5 U.S.C. § 551(6) (emphasis added)).

19-20.[5] But this Court has made clear that *Alabama-Coushatta Tribe* says no such thing; to the contrary, "[t]here is no requirement of 'finality' for [§ 702] waiver to apply." *Bear Creek*, 571 F. Supp. 3d at 599 (quoting *Ala.-Coushatta Tribe*, 757 F.3d at 489). "[T]he requirement of 'finality' comes from § 704 [of the APA]" and applies *only* where "the general provisions of the APA" are the substantive basis for the cause of action. *Id.* (quoting *Ala.-Coushatta Tribe*, 757 F.3d at 489). That is not this case.

The MetaMask claim is brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 — *not* Section 704 of the APA. And because the Declaratory Judgment Act does not "provide an independent cause of action," "it is the underlying cause of action of the *defendant* against the plaintiff that is actually litigated," *Braidwood*, 70 F.4th at 932-33 (quoting *Collin Cty.* v. *Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990) (emphasis added)); *see also Neese* v. *Becerra*, 640 F. Supp. 3d 668, 685 (N.D. Tex. 2022) ("In a declaratory-judgment action, the relevant cause of action is the defendant's anticipated lawsuit against the plaintiff."). The MetaMask count thus does not rest on the APA, but rather the substantive securities statutes underlying the SEC's allegations against Consensys. *See* Compl. ¶ 86 (citing Section 15 of the Exchange Act and Section 5 of the Securities Act). Consensys is therefore "not required to establish 'final agency action' for the Section 702 waiver to apply." *Bear Creek*, 571 F. Supp. 3d at 599; *accord Texas*, 88 F.4th at 1134. And contrary to defendants' suggestion, Defs. Br. 20, because the Complaint does not invoke Section 704, that provision's other exceptions — including that the plaintiff have "no other adequate remedy," 5 U.S.C. § 704 — also do not apply. Defendants' sovereign immunity challenge should be rejected.

---

[5]    While defendants advance other sovereign immunity arguments as to the ETH claims that, as set forth above, are now moot, as to the MetaMask claim they rely exclusively on the mistaken contention that the requirements of Section 704 of the APA preclude waiver of sovereign immunity in this case. *See* Defs. Br. 7-12, 19-20.

### 2.   The MetaMask count is not barred by the ripeness doctrine

Defendants also argue that "this Court lacks jurisdiction over the MetaMask count" because it is "unripe." Defs. Br. 16-19. But defendants do not dispute that the MetaMask claim satisfies "Article III's case-or-controversy requirement" of "[c]onstitutional ripeness." *DM Arbor Ct., Ltd.* v. *City of Houston*, 988 F.3d 215, 218 n.1 (5th Cir. 2021). Instead, defendants' ripeness arguments concern what the Supreme Court has called — but defendants never acknowledge as — "prudential ripeness" considerations, a purely discretionary basis upon which "a court *may* decide not to hear a case for prudential reasons, such as '[p]roblems of prematurity and abstractness.'" *Id.* at 218-19 & n.1 (quoting *Buckley* v. *Valeo*, 424 U.S. 1, 114 (1976)) (emphasis added); *see also In re Salubrio, L.L.C.*, 2023 WL 3143686, at *4 (5th Cir. Apr. 28, 2023) (Oldham, J., concurring) ("prudential doctrines implicate judicial discretion"); *Seattle Pac. Univ.* v. *Ferguson*, 104 F.4th 50, 65 (9th Cir. 2024) ("Prudential ripeness is discretionary.").[6] Defendants' core argument that ripeness requirements deprive the Court of jurisdiction and render the MetaMask claim "nonjusticiable" is thus wrong.

Even when properly viewed as appealing to the Court's discretion, these ripeness arguments are simply a strained attempt to avoid adjudication of the MetaMask claim by this Court in favor of a New York forum. To begin, as the Fifth Circuit recently observed, the prudential ripeness doctrine is of questionable "continu[ed] vitality." *Braidwood*, 70 F.4th at 930 n.28 (quoting *Susan B. Anthony List* v. *Driehaus*, 573 U.S. 149, 167 (2014)). That is because the doctrine is inconsistent with the principle that "a federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging." *Lexmark Int'l, Inc.* v. *Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (cleaned up).

Moreover, whatever the vitality of the prudential ripeness doctrine, the MetaMask claim does

---

[6]   "[P]rudential ripeness concerns do not defeat a court's jurisdiction." *DM Arbor Ct.*, 988 F.3d at 220 (citing *Rosedale Missionary Baptist Church* v. *New Orleans City*, 641 F.3d 86, 88-89 (5th Cir. 2011)); *see also Socialist Lab. Party* v. *Gilligan*, 406 U.S. 583, 588 (1972) (noting prudential ripeness involves dismissal "even though [the court's] jurisdiction is technically present").

not implicate it. The court balances "two factors to determine ripeness: (1) 'the fitness of the issues for judicial decision' and (2) 'the hardship to the parties of withholding court consideration.'" *Braidwood*, 70 F.4th at 930 (quoting *Abbott Lab'ys* v. *Gardner*, 387 U.S. 136, 149 (1967)). Because the MetaMask count presents issues that are neither "prematur[e]" nor "abstract[]," *DM Arbor Ct.*, 988 F.3d at 218 n.1, it is fit for judicial decision. "[N]o further factual" development is needed to resolve this claim because it merely concerns the application of the securities laws to facts about Consensys's business that are not in genuine dispute. *Braidwood*, 70 F.4th at 930. This is not a situation where "a claim is contingent on future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (cleaned up). Though these issues involve some "fact-specific inquiry," that targeted discovery in this matter is now complete and the record contains "sufficient facts to determine whether" Consensys is entitled to the declaratory relief it seeks. *Id.* at 931.

And when Consensys filed suit it faced a credible threat of enforcement (one that materialized with the SEC's filing of an enforcement proceeding). *See supra* pp. 6-8. This alone establishes hardship, as "[l]itigants are entitled to relief where they remain under a constant threat that government officials will use their power to enforce the law against them." *Braidwood*, 70 F.4th at 932 (cleaned up); *see also id.* at 731 ("[t]he *in terrorem* effects from the [SEC's position] and a credible prosecution risk are sufficient" to establish hardship).

Defendants' invocation of *Walmart Inc.* v. *DOJ*, to "show[] the unripeness of the MetaMask count," Defs. Br. 17-19, does not withstand scrutiny. In that case, Walmart asked the court to issue nine broad declarations setting out how the relevant statute and regulations should be generally construed. 21 F.4th 300, 306, 312 (5th Cir. 2021). The Fifth Circuit found no agency action and hardship because Walmart could not point to *any* prior action crystallizing the agency's position on the relevant issues — and the government's later-filed action ultimately did *not* assert the same positions

from which Walmart had sought relief. *See id.* at 300, 313. The court relied on "[t]hose discrepancies [to] illustrate the peril of treating Walmart's requested declarations as constituting a ripe case or controversy." *Id*. at 312. Because "[l]egal theories not accepted or pursued by the government cannot create cognizable hardship," the court found, this "discrepancy" undermined "ripeness." *Id.* at 313.[7]

Consensys, in contrast, has pointed to numerous actions — including the *Coinbase* action, the Wells notice, and the New York action — confirming the SEC's regulatory position on the relevant issues. *See supra* pp. 2, 7-8; *see also Braidwood*, 70 F.4th at 931 (claim ripe where EEOC "brought a successful suit against another violator for the same policies"). Defendants fail to identify any daylight between the agency positions being challenged in the instant MetaMask claim and those ultimately adopted by the SEC in the New York action.[8] And unlike in *Walmart*, discovery in this action is now complete, and the parties will soon be briefing a dispositive motion. Declining to hear this case would deny Consensys the prompt adjudication of its claim, on the schedule already ordered by the Court, threatening to delay removal of the overhang over its business.

For these reasons, Consensys's claim is ready and fit for prompt adjudication in this Court. There is no basis to deny Consensys that relief on the discretionary ground of prudential ripeness, which in any case poses no obstacle to jurisdiction under well-settled law.

---

[7]      Defendants' suggestion that the later-filed New York action automatically removes any hardship to plaintiff, Defs. Br. 19, is inconsistent with precedent. In *Abbott Laboratories*, the Supreme Court admonished that requiring a regulated entity "to challenge" disputed agency action "only as a defense to an action brought by the Government" would "harm [it] severely and unnecessarily." 387 U.S. at 153. In such circumstances, the Court held, a declaratory judgment action "must be permitted, absent a statutory bar or some other unusual circumstance." *Id.* Acknowledging that this could lead to "eventualities" like overlapping "suits in various jurisdictions," the Court noted that there are procedural tools other than ripeness that are more appropriately employed to address these concerns. *Id.* at 154-55.

[8]      Defendants note that the Complaint does not address whether the digital assets accessible through MetaMask software are securities. *See* Defs. Br. 18 (quoting Compl. ¶ 87). But that is beside the point: even assuming counterfactually that the MetaMask software is used to transact in securities, Consensys would still be entitled to a declaratory judgment on the grounds that the MetaMask software does not undertake "broker" activities or "offer and sell" those digital assets as part of any such transactions. Compl. ¶¶ 87-90. Because defendants fail to explain how *those* key matters that will be the subject of Consensys's imminent summary judgment motion depend on further factual development, their ripeness objection fails.

### B.   This Court should retain jurisdiction over the MetaMask claim

Defendants contend that even if this Court has jurisdiction over Consensys's declaratory judgment action concerning MetaMask, it should decline to retain that jurisdiction and instead defer to the New York proceedings. Defs. Br. 21-23. Defendants ignore the Fifth Circuit's firm adherence to the first-filed rule: "in the absence of compelling circumstances, the district court who gets the suit first should be the one to decide the case." *Pontchartrain Partners, L.L.C.* v. *Tierra de Los Lagos, L.L.C.*, 48 F.4th 603, 606 (5th Cir. 2022) (cleaned up). There is no dispute that this action was filed months before the New York action and therefore takes priority. And none of the factors identified by defendants warrant dismissing this case or otherwise deferring to the second-filed New York action.

Defendants attempt to escape the first-filed rule by casting this action as "improper anticipatory litigation." Defs. Br. 21-22. But as the Fifth Circuit has acknowledged, "[t]he filing of every lawsuit requires forum selection" and "declaratory judgment suits are routinely filed in anticipation of other litigation." *Sherwin-Williams Co.* v. *Holmes County*, 343 F.3d 383, 391 (5th Cir. 2003). Accordingly, the Fifth Circuit has made clear, "terms such as 'forum selection' and 'anticipatory filing' [used] to describe reasons for dismissing a federal declaratory judgment action" are really just "shorthand for more complex inquiries" intended to identify a "narrower category" of lawsuits. *Id.* The crux of those inquiries is whether the lawsuit was "filed for reasons found improper and abusive." *Id.* So long as the action was brought for "a reason consistent with the purpose of the Declaratory Judgment Act," dismissal is not warranted. *Id.* at 401.

Consensys indeed had good reason under the statute to file its declaratory judgment action — and to do so with urgency in this District. The SEC had investigated Consensys's MetaMask software for years before issuing a Wells notice indicating that SEC staff would recommend an enforcement action. But the staff gave no indication as to when the SEC would approve such an action or when any such suit would be filed. Given the investigations' years-long pendency, Consensys was rightly

concerned that the SEC's decision-making process, and therefore the cloud over Consensys's business, would continue indefinitely.

That concern was magnified by the SEC staff's notice to Consensys that, although it had reached a determination as to MetaMask, its investigation into Consensys's transactions in ETH was ongoing — presenting the prospect that the SEC might wait months or even years before bringing a consolidated enforcement action. Consensys therefore had every reason to commence litigation to clear its name and confirm that its MetaMask software does not implicate the securities laws. It was vindicated in that decision, as the SEC did not file an enforcement action until two months later — and only after Consensys moved for a schedule in this action and made clear its intent to move expeditiously toward resolution.

Nor was there anything remotely "abusive" about Consensys's choice of forum. Consensys is headquartered in Fort Worth, Compl. ¶ 17, making this District the natural forum for a dispute regarding its business. And the SEC gave Consensys no reason to think that if and when it chose to commence an enforcement action it would do so in some other forum.[9]

Finally, defendants summarily contend that, regardless of the considerations above, now that the SEC has decided to file its enforcement action in New York this Court should defer to the SEC's hand-picked forum in the name of efficiency and the proper allocation of decision-making among federal courts. Defs. Br. 22-23. This has it exactly backwards. Under well-settled law, it is this Court — as the forum of the first-filed action — that has priority in determining how the two suits should

---

[9]     The SEC broadly objects to being "force[d] . . . to litigate . . . as the defendant rather than as the plaintiff." Defs. Br. 22. But neither of the cases cited by defendants supports this objection. See Agri-Trans Corp. v. Gladders Barge Line, Inc., 721 F.2d 1005, 1011 (5th Cir. 1983) (holding that issue of whether sunken barge "constitute[d] an obstruction," thus making the "negligent sinker" responsible for the cost of removal, "was not ripe for judicial consideration absent antecedent administrative action" but otherwise affirming grant of declaratory judgment); Groos Nat'l Bank v. Comptroller of Currency, 573 F.2d 889, 895 (5th Cir. 1978) (holding that bank's "action for declaratory judgment [against the Comptroller of the Currency] falls within the [banking statute's explicit] removal of jurisdiction over [specified categories of] actions").

proceed efficiently so as to avoid duplication. *See Save Power Ltd.* v. *Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) ("[T]he court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed.").[10] Moreover, the SEC waited two months after this litigation commenced to file its own action. And when it did, instead of filing the complaint in this Court so the related actions could be consolidated and the issues adjudicated efficiently in one forum, the SEC filed its complaint a thousand miles away in New York. It is thus *the SEC* that has acted contrary to the first-filed rule and created the prospect of "piecemeal resolution of issues that call for a uniform result," undermining efficient resolution of the issues. Defs. Br. 23. The SEC's attempt to use as a sword the very inefficiencies it created should be rejected.

## III.   THE REQUEST TO TRANSFER THIS ACTION TO NEW YORK SHOULD BE DENIED

Defendants argue that even if this Court declines to dismiss, it should transfer the case to New York. Defs. Br. 23-25. But in support of transfer, defendants mostly recycle the same arguments they made in support of discretionary dismissal. Defs. Br. 24-25 (citing Defs. Br. 21-22 and 22-23). Those arguments are no more convincing here.

Defendants do not come close to demonstrating, as they must, that "the [EDNY] is *clearly more convenient* than the Northern District of Texas." *Gen'l Electric Cap'l Corp.* v. *Daystone Int'l Corp.*, 2010 WL 11618844, at *2 (N.D. Tex. Jan. 6, 2010) (emphasis added). "When the transferee forum is no more convenient than the chosen forum, the plaintiff's choice should not be disturbed." *Id.*; *see also SEC.* v. *Kearns*, 2009 WL 2030235, at *2 (S.D.N.Y. July 14, 2009) ("SEC's choice of

---

[10]        The law applicable in the New York action is in accord. *See Silver Line Bldg. Prod. LLC* v. *J-Channel Indus. Corp.*, 12 F. Supp. 3d 320, 328 (E.D.N.Y. 2014) ("The first-to-file rule has generally been interpreted to dictate not only which forum is appropriate, *but also which forum should decide which forum is appropriate.*" (citation omitted) (emphasis added)). Consensys therefore plans to move to dismiss or stay the New York action in favor of this first-filed action. If this Court denies defendants' motion to dismiss, the court presiding over the New York action will be able to defer to this Court's judgment and grant Consensys's anticipated motion to dismiss or stay the New York action. None of the inefficiencies or intrusions defendants invoke, Defs. Br. 22-23, need come to pass.

forum" is given no special deference.). To determine whether a moving party has met its burden, "a district court must consider a number of private and public interest factors," none of which is dispositive.[11] *Gen'l Electric*, 2010 WL 11618844, at *1-2 (quoting *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)).

Defendants do not even try to identify a private factor that favors transfer here. *See* Defs. Br. 23-25. And for good reason: Consensys is headquartered in Fort Worth and the SEC has an office here, making it a convenient forum for both parties.[12] The private factors weigh against transfer.

Defendants nonetheless contend that the "interests of justice" favor transfer, pointing to comity and purported inefficiencies in litigating this case in parallel with the New York court. Opp. 23-24. But for the reasons discussed above, the SEC's protestations ring hollow. *See supra*, pp. 18-19. *This* action was first-filed, giving it priority over the New York action. And it is *this* Court, in the District of Consensys's headquarters, that has a strong interest in adjudicating claims concerning Consensys's business. Further, it is in *this* Court where discovery is already complete and the parties are preparing to file briefs on a dispositive motion just next month. Transferring this action to New York would disrupt that orderly schedule and prevent — not promote — an efficient resolution. It was defendant SEC, by commencing its later-filed action in New York rather than here, that raised the potential risk of duplicative proceedings and inconsistent rulings. Defendants should not now be allowed to use that

---

[11]    These factors include: "(1) access to sources of proof; (2) the availability of the compulsory process power; (3) costs to witnesses of appearing; and (4) any other practical considerations affecting the ease and expense of trial" and "(1) judicial economy; (2) interests associated with having local interests decided locally; (3) forum familiarity with the law at issue; and (4) problems arising from conflict of law." *Gen'l Electric*, 2010 WL 11618844, at *1-2.

[12]    Any additional "practical considerations" that might apply in other litigation bear no weight in the calculus here. Access to Consensys's documentation, including its software code, is equally available in any forum; and the locations of Consensys personnel, including engineers and product managers, reach worldwide, from Texas and New York to California and London, leaving no thumb on the scale for this metric. In any case, as noted above, all such discovery relevant to Consensys's imminent dispositive motion is already complete, including its document production and testimony, in accordance with this Court's order.

decision to deny Consensys its chosen forum for resolution of its claim. The "interests of justice" continue to favor the prompt adjudication of the MetaMask claim in this Court.

## CONCLUSION

For these reasons, the motion to dismiss or in the alternative transfer should be denied.

Dated: August 16, 2024                    Respectfully submitted,

*/s/ Brant C. Martin*
Brant C. Martin
State Bar No. 24002529
brant.martin@wickphillips.com
Colin P. Benton
State Bar No. 24095523
colin.benton@wickphillips.com
**WICK PHILLIPS GOULD & MARTIN, LLP**
100 Throckmorton Street, Suite 1500
Fort Worth, Texas 76102
Telephone:     (817) 332-7788
Fax:              (817) 332-7789

-and-

William Savitt (*pro hac vice*)
Kevin S. Schwartz (*pro hac vice*)
Sarah K. Eddy (*pro hac vice*)
Noah B. Yavitz (*pro hac vice* pending)
Adam M. Gogolak (*pro hac vice*)

**WACHTELL, LIPTON, ROSEN & KATZ**
51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
wdsavitt@wlrk.com
kschwartz@wlrk.com
skeddy@wlrk.com
nbyavitz@wlrk.com
amgogolak@wlrk.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

     I hereby certify that on August 16, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will electronically mail notification of such filing to all counsel of record who have appeared in this case.

                                  */s/ Brant C. Martin*
                                  Brant C. Martin